492 So.2d 48 (1986)
Mrs. Patricia W. FREY, et al.
v.
Calvin A. ALFRED, et al.
No. CA 85-0185.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied August 20, 1986.
*49 Alvin P. Perry, Jr. and William H. Reinhardt, Jr., New Orleans, for plaintiffs-appellants.
Steven C. Judice and Russel J. Cremaldi, Franklin, for Calvin A. Alfred, Metropolitan Ins. Co., W.J. Alfred & Sons, Inc., Aetna Cas. & Sur. Co. & ABC Ins. Co. defendants-appellees.
James L. Donovan, Jr., Donovan & Lawler, Metairie, for Metropolitan Property and Liability Ins. Co.
Before LOTTINGER, SAVOIE and CRAIN, JJ.
CRAIN, Judge.
Plaintiff-Appellant, Patricia Frey, individually and on the behalf of her minor daughter, Sharon Giluso, brought this claim for damages arising out of an automobile accident.[1] Defendant-Appellants are Calvin Alfred, his employer, W.J. Alfred & Sons, Inc. and their insurer, Aetna Casualty. Plaintiff claimed over $15,000,000 in damages. Liability was stipulated. Plaintiff appeals the trial court's award of damages. The facts are essentially undisputed.

FACTS
On December 11, 1980, Sharon was a passenger in a car being driven on Highway 90 near Morgan City. The driver was her fiance, Gordon Duval. Sharon was sixteen years old and 30 weeks pregnant. Calvin Alfred was approaching in the opposite lane, allegedly intoxicated. He crossed the center line of Highway 90 and crashed head on into the Duval vehicle. Gordon Duval was killed instantly. Sharon suffered only relatively minor physical injuries consisting of a few small cuts, and some bruises. However, she immediately went *50 into labor. Her child was stillborn, having suffered a massive skull fracture and placental abruption. The suit seeks damages in part for Sharon's past and future medical expenses; physical pain and suffering; permanent disfigurement; mental anguish and psychological damage; permanent disability; loss of earning capacity; and wrongful death of her stillborn child. The trial court awarded damages as follows:

 Physical pain and suffering
 associated with the stillbirth ...... $2,000
 Physical pain and suffering for cuts
 and bruises ......................... 2,000
 Future pain and suffering for future
 scar revision surgery .............. 500
 Past psychological pain and suffering 40,000
 Disfigurement ...................... 1,000
 Wrongful death of child .............. 15,000

The court also awarded all past medical expenses for Sharon and funeral and burial expenses for the fetus. The trial court rejected most of plaintiff's extensive claims for special damages which were allegedly caused by the catastrophic psychological injuries she suffered as a result of the loss of her loved ones. The court's rejection was based on its finding that most of her psychological injuries predated the accident, her father also having been killed in an automobile accident by a drunk driver when Sharon was ten (coincidently in the month of December). The tragic loss of her father at this early age caused Sharon great psychological trauma. She soon grew antisocial and by the age of twelve was heavily into alcohol, drugs and promiscuous sex. She had received some psychotherapy and in patient care, but these treatments were terminated prematurely.
The trial judge, in extensive written reasons for judgment, rejected most of plaintiff's demands finding that she had failed to prove the degree or amount of damages resulting from the previous accident involving her father, and the present one. The court found that it lacked sufficient evidence which would enable it to quantify the degree of aggravation of her injuries based on defendant's fault, and that it was prohibited from speculating in giving such awards. The plaintiff appeals.
Plaintiff's assignments of error question the trial court's rejecting her claims for;
a) future psychiatric treatment
b) permanent psychological disability
c) loss of earning capacity
d) future psychological injury.
Plaintiff also claims that the amounts the trial court did award as damages were so low as to constitute an abuse of discretion.

FUTURE SPECIAL DAMAGES
Plaintiff claims future special damages for medical expenses and loss of wages.

a) Future medical expenses

The trial court awarded $250 to cover the cost of anticipated scar revision surgery. Plaintiff has not questioned this award.
Plaintiff claims that the cost of future psychiatric care for Sharon ranges from $230,000 to $315,000. Expert testimony established that she will likely need one to two years of intensive inpatient care at a cost of several thousand dollars a month. In addition, Sharon will probably have to undergo periodic out patient treatment for the rest of her life. The trial court refused to award any sums for these expenses and gave a thorough review of the evidence in its reasons for judgment. From this evidence it is clear that Sharon suffers enormous psychological problems. It is also clear that these problems pre-existed the accident, were present at the accident, and continue to exist after the accident. One doctor put it succinctly when he stated that at 12 years of age she experienced "a constellation of symptoms best described as runaway reaction, incorrigible management problems in the home, developing severe depression and suggestion of substance abuse and sexual promiscuity." All this had occurred four years before the accident in question. Sharon was exhibiting essentially the same symptoms after the accident that she was treated for by him before the accident.
We do not choose to undergo what would be essentially a recapitulation of the trial *51 court's extensive review of the medical evidence. We give its reasons for denying plaintiff's claims for future medical expenses:
While it is undoubtedly true that a Plaintiff may recover for future psychological treatment necessitated by the fault of another, this case is complicated by the pre-existing psychological condition of the Plaintiff. In cases of this type, Plaintiff bears the burden of proving the extent of damage caused by defendants negligence. If Plaintiff had been a totally normal individual before the 1980 accident, the Court would have no hesitancy in awarding the full cost of all future psychological treatment.
. . . . .
On reviewing all of the evidence submitted in this case, the Court is unable to say that the evidence preponderates in Plaintiff's behalf. Despite repeated attempts, and searches through the record, the Court can find no evidence intorduced [sic] by Plaintiff to quantify the extent by which Plaintiff's pre-existing injury was agrivated [sic] by the 1980 accident. Under these circumstances, the Court not only refuses to, but is precluded from making any award for future psychological treatment.
The trial court concluded that plaintiff was in need of psychiatric care at the time of this accident and would have needed further psychiatric care regardless of the second accident. We find no manifest error in this conclusion from our review of the record. Under these circumstances it then becomes necessary to quantify the future medical expenses necessitated by this accident. c.f. Landry v. Bill Garrett Chevrolet, Inc., 443 So.2d 1139 (La.App. 4th Cir.1983).
Dr. Goldberg was the only psychiatrist that treated Sharon both before and after the accident. He was never asked by plaintiff to attempt to specify the future psychiatric expenses attributable to the second accident. Rather, it was defendant who questioned him in regard to this on cross-examination. Dr. Goldberg felt it would be impossible to measure the amount the condition was aggravated or to distinguish between the loss of Sharon's father, her fiance and stillborn son. A second psychatrist, Dr. Skinner, was asked by plaintiff, "exactly [what] did the second accident do?" Her response was that it definitely made everything worse, but that she could not be more specific. On cross-examination she admitted there was no way to tell what Sharon's coping abilities had been prior to the accident and the degree to which those abilities had been shortened.
Dr. Davis, another psychiatrist who had treated Sharon, was deposed twice. Only in one instance did plaintiff question him directly about the pre-existing condition. Dr. Davis was asked if he thought her residual problems were precipitated by the accident or whether they were aggravated by it. In response, he indicated that an exacerbation of the old wounds had occurred, and that perhaps the second accident was more significant. However, he was not asked to attempt any quantification of the extent of the exacerbation.
There is no evidence in the record from which the trial court could have made even the type of "ballpark" apportionment of damages normally left to the trier of facts sound discretion. Our review of the record indicates no manifest error by the trial court in the factual determination rejecting these expenses. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). There is a paucity of evidence in the record upon which any award for future medical expenses resulting from this accident could be based.
The trial court did not reject plaintiff's demands because an exact degree of certainty was lacking. There was simply no evidence in the record to establish a reasonable basis for allocating any apportionment whatsoever. Compare, Preston v. Chrysler Motors Corporation, 334 So.2d 486 (La. App. 1st Cir.1976). This assignment of error is without merit.

b) Permanent psychological disabilityloss of income

Plaintiff claims that her psychological disability permanently prevents her *52 from engaging in any future occupation. Evidence was introduced to show that, based on minimum wage projections, her prospective loss of earnings from the date of the accident through her work life expectancy amounted to approximately $130,000. This claim was rejected. The court found that plaintiff failed to prove the degree to which the accident aggravated her pre-existing psychological injuries and attributed to subsequent disability.
Sharon has only a seventh grade education. She dropped out of school at around 12 years of age. Her work history is sporadic at best. While a sixteen year old is not likely to have much of a work history, the four or five attempts she had made at working by the time of the trial proved to be fruitless. She was not able to keep a job for more than four weeks. Significantly, at least one of these jobs was started before the accident. She only held it for a few weeks as a result of her existing psychological condition.
Sharon clearly had significant pre-accident psychological problems and had not been able to hold a job. Yet she seeks damages for the full extent of her disability, while introducing little or no evidence to fairly apportion her damages due to defendant's fault. We find no manifest error in the trial court's finding.

c) Loss of earning capacity

Plaintiff asserts her lost earning capacity due to disability is approximately $100,000. The trial judge rejected this claim for the same reasons he rejected her claim for loss of wages. We agree. This assignment lacks merit.

FUTURE DAMAGES FOR PSYCHOLOGICAL PAIN AND SUFFERING
The trial court awarded Sharon $40,000 for past psychological pain and suffering. However, he rejected her demands for future damages. This rejection was also based on a finding that she failed to show what degree of pain and suffering she will experience as a result of the aggravation of her pre-existing condition.
Prior to the accident, Sharon required extensive psychiatric treatment and was not employable. However, prior to the accident, she did not, and of course, could not have any pre-existing mental anguish associated with losses that had not yet occurred. The lower court apparently recognized this when making the award for past mental anguish, yet the court only made the award up to the date of trial. This was a clear abuse of discretion. Undoubtedly Sharon will experience mental anguish for her losses for the rest of her life and is entitled to be compensated for her pain and suffering.
In the realm of general damages such as mental anguish and distress there is necessarily a great deal of uncertainty. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Baack v. Lee, 419 So.2d 18 (La.App. 3rd Cir.1982). On the facts of this case, we feel that $70,000 was the lowest amount reasonably within the trial court's discretion for both past and future mental anguish, pain and suffering.

IMPOSSIBILITY OF APPORTIONMENT
By way of this assignment, plaintiff alleges the trial court erred in not holding defendant liable for the whole of Sharon's psychological condition, the reason being that it is impossible to apportion between her pre-existing condition and subsequent trauma. Consequently, plaintiff seeks to make defendant liable for all her future medical expenses, psychological injuries, loss of wages and earning capacity. In support of this argument plaintiff's counsel directs our attention to several decisions from out of state which have articulated such a rule. Newbury v. Vogel, 151 Colo. 520, 379 P.2d 811 (1963), Kawamoto v. Yasutake, 49 Hawaii 42, 410 P.2d 976 (1966); Blaine v. Byers, 91 Idaho 665, 429 P.2d 397 (1967); Wise v. Carter, 119 So.2d 40 (Fla.Dist.Ct.App.1960). However, plaintiff is unable to direct us to any similar jurisprudential rule in our state.
*53 Irrespective of whether Louisiana has or should adopt such a rule, its application in this case would have been erroneous. Plaintiff would first have to prove that such an apportionment is indeed impossible. This has not been done. A distinction must be made between difficulty of proof and impossibility of proof. What little evidence there is on the subject is contradictory. It cannot be determined whether such an apportionment is impossible, or whether it was possible, but plaintiff simply failed to introduce enough evidence to make a determination. This assignment is without merit.

DEFENDANT'S BURDEN OF PROOF
Plaintiff contends that once expert testimony was presented that Sharon's condition was a result of the accident, the trial court erred in not shifting the burden to defendant to refute this testimony. Jordan v. Travelers Insurance Co., 231 So.2d 678 (La.App. 1st Cir.1970). A careful reading of Jordan shows that whatever pre-existing condition plaintiff might have had, it was dormant prior to the accident and no symptoms had recently manifested themselves, i.e., plaintiff was "in good health". Jordan, did not address any question of quantification of aggravation of an active pre-existing condition. This assignment lacks merit.

ABUSE OF DISCRETION

a) Past Psychological Pain and Suffering

Plaintiff alleges the trial court erred in awarding only $40,000 for the mental anguish, pain and suffering she had experienced to the date of the trial. We have already adjusted this award by awarding a sum for past, present and future mental anguish, pain and suffering.

b) Physical Pain and Suffering Associated With the Child's Stillbirth

Plaintiff contends the trial court abused its discretion in awarding only $2,000 for the physical pain and suffering Sharon suffered during the birth of her stillborn child. The trial court held that her memory of the stillbirth was cloudy and incomplete.
As a result of the accident, Sharon underwent spontaneous, trauma induced delivery of her stillborn child for 28 hours. The child was stillborn as a result of a severe placental abruption.[2] The attending physician testified that pain is a clinical hallmark of a placental abruption. The pain experienced is similar to that of a contraction, except that it is continuous. There is none of the "stop-and-go" pain of normal labor, rather there is "a continuous, unremitting pain". Defendant contends that there is little evidence Sharon actually experienced such pain. However, we note that several of the medical records in evidence contain numerous references to Sharon's, "thrashing about in pain" during this period. Under the circumstances, we feel the trial court abused his discretion in only awarding $2,000. While we feel a higher award is indicated, we can only disturb this award by raising it to the lowest point reasonably within the trial court's discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). We feel that $5,000 is the lowest point reasonably within the trial court's discretion.

c) Other Awards

The trial court awarded $2,000 for the scratches, lacerations and bruises Sharon suffered. Plaintiff urges that a much higher award is indicated. The court also awarded $1,000 for disfigurement as a result of the scars and $500 for future pain and suffering associated with contemplated scar revision surgery. Sharon received only two relatively significant cutsone above her ankle and another above her knee, along with other minor scratches. The cuts have left two scars which are *54 approximately one inch long and one-quarter inch wide. They are apparently relatively inconspicuous. However, judging from the photographs in evidence, before they healed they were deep, unsightly and undoubtedly painful. Sharon was treated over a period of 10 months by an orthopedist for discomfort and tenderness she was experiencing. Nevertheless, as the trial court noted, no pain medication was ever prescribed for these complaints, nor are there any residual problems. We find that while these awards are low, they are within the range of discretion afforded the trial court.
Accordingly, for the above and foregoing reasons, judgment of the trial court is affirmed in part, reversed in part and amended. Both parties are cast equally for costs of these proceedings.
AFFIRMED IN PART, REVERSED IN PART, AMENDED AND RENDERED.
NOTES
[1] Patricia Frey sued individually for lost wages and expenses allegedly incurred as a result of the accident. These claims are not before us.
[2] An abruption is a separation of the placenta from the uterus. The separation interrupts the flow of blood and oxygen to the fetus. If the degree of separation is high enough, the fetus dies.