559 So.2d 929 (1990)
Thresa L. WILLIAMSON and Godfrey S. Williamson, Plaintiffs-Appellants,
v.
ST. FRANCIS MEDICAL CENTER, INC. d/b/a St. Francis Medical Center, Ora Britton, et al., Defendants-Appellees.
No. 21306-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1990.
*930 Hamilton & Carroll by Donald K. Carroll, Oak Grove, for plaintiffs-appellants.
Hayes, Harkey, Smith, Cascio & Mullens by Bruce M. Mintz, Monroe, for defendants-appellees.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiffs, Thresa L. Williamson and Godfrey S. Williamson, appeal a trial court judgment rendered in their favor, seeking an increase in the trial court's awards of damages. For the reasons assigned below, we amend the judgment of the trial court, and, as amended, affirm.

FACTS
Mrs. Williamson, who was then seventy-seven years old, entered St. Francis Medical Center on November 16, 1985. She was suffering from severe pain in her left hip. Her treating physician, Dr. Frank X. Cline, had diagnosed her condition as severe degenerative arthritis in her left hip. On November 21, 1985, Mrs. Williamson underwent surgery for a total left hip replacement. The surgery was performed by Dr. Cline.
On November 29, 1985, Mrs. Williamson was in bed in her room in the St. Francis Medical Center. She was being attended by Ora Britton, L.P.N. Ms. Britton, who was acting alone, attempted to help Mrs. Williamson in turning over in her bed. During this procedure, the nurse neglected to take measures to prevent Mrs. Williamson's legs from crossing and thus allowed the surgically implanted hip component to become dislodged. Dr. Cline's partner was called and he tried unsuccessfully to manipulate the component back into place. Mrs. Williamson was in severe pain and required pain medication for several days. On December 5, 1985, Dr. Cline operated again, *931 this surgery consisting of another hip replacement. During the course of this second surgery, Dr. Cline reopened the same incision and installed another hip component. However, this procedure was not as extensive or as intrusive as the first surgery.
On December 11, 1985, Mrs. Williamson was transferred to the hospital's rehabilitation unit. On December 17, 1985, she was released from the hospital and taken home by ambulance. After returning home, Mrs. Williamson required special home care services three times per week for the next three months. She resumed walking in April of 1986. At trial, approximately three years after her surgery, Mrs. Williamson still required the assistance of a walker.
Subsequent to the surgeries, Mrs. Williamson developed heterotopic bone formation around the hip joint. This condition involves unexpected formation of new bone in the soft tissues. Apparently such formation occurs in only two to three percent of all total hip replacements. According to Dr. Cline, the condition is unpredictable and its cause is unknown. Dr. Cline first saw evidence of this condition in February of 1986.
Mrs. Williamson continued to see Dr. Cline periodically. In June, 1986, Dr. Cline noted that she was walking satisfactorily with the walker. In November, 1986, Dr. Cline observed that she had no limp at that time. Thereafter, Dr. Cline continued to monitor her condition, seeing her three times in 1987 and twice in 1988.
On January 20, 1988, the Williamsons filed suit against St. Francis Medical Center and its employee, Ora Britton, claiming that their negligence caused Mrs. Williamson's injury. Mr. Williamson, who was also elderly and disabled, sought recovery for loss of consortium.
A trial on the merits was held December 15, 1988. Both of the plaintiffs testified. Carolyn Ann Powers, R.N., Ms. Britton's supervisor, was called by the plaintiffs on cross-examination. Dr. Cline's testimony was presented by deposition. The defendants presented the testimony of Ms. Britton, Ms. Powers, and Ferrell Lynn Crowell, St. Francis' assistant administrator.
On February 15, 1989, the trial court issued a written opinion in which it granted judgment in favor of the plaintiffs. In its opinion, the trial court awarded $14,000 in general damages for the additional pain suffered by Mrs. Williamson in the interval between the time of the accidental hip dislocation and the second surgery, as well as for the pain caused by the second surgery. The trial court found that she was not entitled to damages for disability or loss of earnings. Furthermore, inasmuch as Mrs. Williamson paid no hospital expenses (Medicare paid approximately one-third of the $18,000 bill and the hospital "contractually adjusted" or cancelled the remaining balance), the trial court felt that she was not entitled to recover for these items. The trial court also found that the evidence did not demonstrate that the drugs, home care therapy and trips to medical clinics were required by the second surgery alone. The trial court assessed an expert witness fee of $225 for Dr. Cline (who had charged the plaintiffs a fee of $425).
Additionally, the trial court awarded $750 to Mr. Williamson for loss of consortium. The court found that very little of his loss of his wife's services was attributable to the dislocation and second surgery. Judgment in conformity with this written opinion was signed on April 13, 1989.
The plaintiffs appeal from this judgment. They assign the following as error: (1) the trial court erred in awarding inadequate damages to Mrs. Williamson and in failing to award special damages, such as loss of wages and compensation for disability; (2) the trial court erred in making an inadequate award to Mr. Williamson for loss of consortium; (3) the trial court erred in not ordering payment of certain medical bills which were stipulated by the parties as being correct; (4) the trial court erred in refusing recovery of special damages for certain expenses paid by collateral sources; and (5) the trial court erred in awarding Dr. Cline an expert witness fee of only $225.

*932 AWARD OF GENERAL DAMAGES TO MRS. WILLIAMSON

Heterotopic Bone
The plaintiffs argue that Mrs. Williamson is entitled to an increase in the award of general damages rendered by the trial court. They contend that the defendants' negligent dislocation of her hip prosthesis aggravated a preexisting condition and that Mrs. Williamson is entitled to compensation for the full extent of the aggravation. They further contend that since the trial court was unable to determine whether the heterotopic bone which formed in the soft tissues around her hip joint resulted from the first or the second surgery, Mrs. Williamson is entitled to recover from the defendants for all of her damages.
In their brief, the plaintiffs argue that where it is impossible to apportion between a pre-existing condition and a subsequent trauma, the tortfeasors are liable for the entire damages. In support of this proposition, the plaintiffs cite Newbury v. Vogel, 151 Colo. 520, 379 P.2d 811 (1963); and Wise v. Carter, 119 So.2d 40 (Fla.Dist. Ct.App.1960). However, they do not cite any Louisiana cases in which this rule has been adopted. Cf. Frey v. Alfred, 492 So.2d 48, 52 (La.App. 1st Cir., 1986), in which the plaintiff also cited these out-of-state cases without directing the court to any corresponding Louisiana jurisprudence.
Before recovery can be granted for aggravation of a pre-existing condition, a causative link between the accident and the victim's current status must be established. Harrigan v. Freeman, 498 So.2d 58 (La. App. 1st Cir., 1986). Causation is a question of fact and the trial court's determination, as the trier of fact, is entitled to great weight. The trial court's determination cannot be disturbed absent manifest error. Harrigan, supra.
In a personal injury suit the test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident. A plaintiff is aided in establishing this burden by the legal presumption that a medical condition producing disability is presumed to have resulted from an accident if, before the accident, the injured person was in good health, but shortly after the accident, the disabling condition manifested itself. Streeter v. Sears, Roebuck and Co., Inc., 533 So.2d 54 (La.App. 3rd Cir., 1988), writ denied 536 So.2d 1255 (La.1989). If such a showing is made, the burden is upon a defendant who contests the cause-in-fact relationship to show some other particular incident could have caused the injury in question to overcome plaintiff's case. Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App. 2nd Cir., 1986); Streeter, supra.
Based upon the evidence presented at trial, we find no error in the trial court's determination that the heterotopic bone formation was not caused as a result of the negligent dislocation of the hip prosthesis and the second surgery. Dr. Cline's testimony failed to establish that heterotopic bone formation could be caused as a result of trauma. To the contrary, he indicated that the cause of this formation was unknown. In his deposition, he declined to give any opinion as to whether the bone formation was caused by the second surgery.
Additionally, Dr. Cline, the only medical witness, testified that in his opinion, Mrs. Williamson had not suffered any additional long-term disability as a result of the second surgery. He further stated that any problems which Mrs. Williamson incurred in ambulating after the second surgery were connected, in part, to such factors as her weight.
We cannot say that the trial court was clearly wrong in accepting the uncontradicted medical evidence and in determining that Mrs. Williamson suffered no permanent disability as a result of the second surgery. There is no error in the trial court's conclusions. Therefore, we find that Mrs. Williamson is not entitled to recover damages for loss of future wages or additional compensation for disability.

*933 Adequacy of Damages

We next consider whether the trial court's award of $14,000 in general damages for Mrs. Williamson's pain and suffering was abusively low.
Before a trial court's award of damages can be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. A damage award should not be disturbed by a reviewing court absent a showing of clear abuse of the discretion vested in the trial court. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987). In determining whether the trier of fact abused its discretion in making an inadequate award, the evidence must be viewed in the light most favorable to the defendants. Higginbotham, supra.
The evidence demonstrates that as a result of the negligent dislocation of Mrs. Williamson's hip prosthesis, she suffered considerable pain for about six days, the time period between the dislocation and the second surgery. However, the medical evidence shows that she was given "healthy" doses of pain medication to alleviate her discomfort.
The second surgery was performed to remedy the damage to Mrs. Williamson's hip prosthesis. This surgery involved administration of general anesthetic and the reopening of the incision made by the first surgery. However, Dr. Cline testified that the time lapse between the two surgeries was sufficiently brief that the soft tissues had not really healed from the first surgery. Dr. Cline testified that the second surgery prolonged Mrs. Williamson's hospitalization for about two to three weeks. He felt that it had not lengthened her recuperative period, however, because a patient requires several months to heal after a total hip replacement.
Our examination of the record reveals that the second surgery actually prolonged Mrs. Williamson's hospital stay by about eight to eleven days.[1]
In light of this extended hospitalization and the second surgery, we find that when viewed in the light most favorable to the defendants, the trial court's award of $14,000 was not abusively low. Mrs. Williamson received roughly $1,000 per day for her pain and suffering, plus additional sums for undergoing surgery a second time.
We find no merit in this assignment of error.

CONSORTIUM AWARD
The plaintiffs also contend that the trial court erred by awarding an inadequate sum for Mr. Williamson's loss of consortium. For the reasons outlined in detail above, we find that the trial court's award was adequate. As a result of the dislocation and the second surgery, Mr. Williamson lost his wife's services and companionship for only a brief, additional period of about two weeks. The sum of $750 awarded by the trial court is adequate compensation for this loss.
This assignment of error has no merit.

SPECIAL DAMAGES
The remaining assignments of error contest the trial court's refusal to award compensation *934 for several items of special damages.

Collateral Source Rule
The plaintiffs argue that the trial court erred in refusing to allow them to recover for the amount of Mrs. Williamson's hospital bill. Plaintiffs contend that the collateral source rule allows them to recover the full amount even though payment of this bill was made by other sources.
The evidence at trial demonstrated that Mrs. Williamson's total hospital bill was $18,212.96, of which amount Medicare paid $6,090.84. The assistant administrator of St. Francis Medical Center, Ferrell Lynn Crowell, testified that the remaining amount of the bill had been "contractually adjusted" or cancelled by the hospital. He testified the hospital was not allowed to charge Medicare patients for the remaining balance.
Under the "collateral source" rule, a tort-feasor may not benefit, and an injured plaintiff's tort recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the tort-feasor's procuration or contribution. This rule has been applied to hold that the plaintiffs' recovery cannot be diminished by amounts paid by Medicare. Womack v. Travelers Insurance Company, 258 So.2d 562 (La.App. 1st Cir.1972), writ denied, 261 La. 775, 260 So.2d 701 (La. 1972); Weir v. Gasper, 459 So.2d 655 (La.App. 4th Cir.1984), writ denied 462 So.2d 650 (La.1985). Therefore, in the instant case, Mrs. Williamson is entitled to recover the amount of her hospital bill which was attributable to her second surgery and which was paid by Medicare.
By our calculations, only $7,978.18, or about forty-four percent of Mrs. Williamson's total hospital bill was attributable to her accident. Medicare paid approximately one-third of Mrs. Williamson's hospital bill. Therefore we award damages of $2,660 to the plaintiffs, representing the percentage of Mrs. Williamson's bill which was attributable to her accident and which was paid by Medicare.
The plaintiffs also seek the amount which was contractually adjusted by the hospital. In Brannon v. Shelter Mutual Insurance Company, 520 So.2d 984 (La. App. 3rd Cir.1987), the court addressed a situation involving "contractual adjustments." There, the hospital which provided medical care for the plaintiff following her accident with the defendant's vehicle, received funds from the plaintiff's health and accident insurer. Because plaintiff was a Medicaid patient, and the amount which the hospital received from plaintiff's insurer exceeded the amount Medicaid would have paid, the hospital "contractually adjusted" and absorbed the loss for the excess amount of the hospital bill which Medicaid would not have paid. The defendants endeavored to take advantage of the hospital's policy which contractually adjusted the bills of Medicaid patients. The defendants argued that the policy reduced the amount they were obligated to pay. The court ruled that, notwithstanding the contractual adjustment, the plaintiff was entitled to recover the full amount of medical expenses attributable to her accident. In reaching this conclusion, the court reasoned that the defendants should not be allowed to benefit from the hospital's policy which was intended to afford medical treatment to those in need, and that under the civil law the plaintiff owed the hospital a natural obligation to pay the bill. LSA-C.C. Art. 1760-1762.
However, in the present case, the hospital, to whom the bill was owed, was also a tort-feasor. Thus, the benefit to the plaintiffs of the contractual adjustment results from the "procuration or contribution" of the tort-feasor. As a result, we will not allow the plaintiffs to recover for the amount contractually adjusted, or cancelled, by the hospital tort-feasor.
Based on the foregoing, we award the plaintiffs damages of $2,660 for the portion of Mrs. Williamson's hospital bill which was paid by Medicare and which was attributable to the accident. However, we deny recovery for any amount contractually adjusted by the hospital.

*935 Other Special Damages

Additionally, we award the following damages: $483 for Kennedy and Spence (anesthesiologist) (No. P-2); and $41 for Radiology Associates (No. P-3). These amounts were stipulated by the parties as being correct and related to the second surgery. Judgment is further awarded for the following amounts: $3,776 for Dr. Cline; and $305 for Dr. Robin Lake (North Louisiana Clinic). Both of these amounts were for medical services rendered in connection with the second surgery.
The plaintiffs also contend that the trial court erred in awarding Dr. Cline an expert witness fee of only $225, where he charged the plaintiffs a fee of $425 for the taking of his deposition. However, the amount to be awarded as an expert witness fee is within the discretion of the trial court and will not be set aside absent an abuse of discretion. The amount charged by the expert is not conclusive in fixing the amount. Fogg v. Lott, So.2d 177 (La. App. 1st Cir.1983). After examination of the record and Dr. Cline's deposition, we find no abuse of discretion by the trial court in fixing this fee.
In summary, we find that plaintiffs are entitled to recover the following amounts, and judgment will be rendered accordingly:

 General Damages
Pain and sufferingMrs. Williamson $14,000
Loss of consortiumMr. Williamson 750
 _______
 $14,750
 Special Damages
Hospital bill $ 2,660
Dr. Cline 3,776
North Louisiana Clinic (Dr. Lake) 305
Kennedy and Spence 483
Radiology Associates 41
 _______
 $ 7,265

CONCLUSION
The judgment of the trial court is amended and, as amended, affirmed. The trial court judgment is amended by adding the following paragraph:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Thresa L. Williamson and Godfrey S. Williamson and against St. Francis Medical Center, Inc., d/b/a St. Francis Medical Center, and Ora Britton, in solido, in the full amount of $7,265.
In all other respects the judgment of the trial court is affirmed. Costs are assessed against the defendants.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] Dr. Cline anticipated a normal hospitalization following Mrs. Williamson's first surgery. Dr. Cline testified that a normal hospital stay for a total hip replacement was between fourteen and sixteen days. Five or six days of this period are spent on the hospital service, followed by seven to ten days in rehabilitation. Any time which Mrs. Williamson spent in the hospital beyond these days would have been attributable to the second surgery.

Mrs. Williamson's first surgery was on November 21, 1985. However, she was apparently reluctant to be transferred to rehabilitation. Thus, she was still in the hospital service on November 29, when the dislocation occurred (although she had agreed to be transferred). Assuming that her transfer was imminent, she should have been ready for discharge between December 6 and December 9, 1985. Because of the dislocation and the second surgery, she was not discharged until December 17, 1985.