828 So.2d 170 (2002)
Virginia N. CAMPBELL, et ux., Plaintiffs-Appellants
v.
WEBSTER PARISH POLICE JURY, Defendant-Appellee.
Kristina Campbell, Plaintiff-Appellant
v.
Webster Parish Police Jury, Defendant-Appellee.
Nos. 36,391-CA, 36,392-CA.
Court of Appeal of Louisiana, Second Circuit.
September 18, 2002.
*171 A. Richard Snell, Counsel for Appellants.
Hudson, Potts & Bernstein by Brian P. Bowes, Monroe, Counsel for Appellee, Webster Parish Police Jury.
Maynard K. Batiste, Sr., Baton Rouge, Counsel for Appellee, State of Louisiana DOTD.
Before STEWART, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
These consolidated cases involved drivers whose automobiles left the roadway upon encountering an excessive amount of gravel which had been placed upon the roadway by defendant a few hours before the accidents. The defendant was held negligent and now contests the trial court's failure to assign a portion of the fault to each driver. The amount of plaintiffs' damages is also contested. For the following reasons, we affirm the trial court's ruling.

Facts
At 6:00 p.m. on June 22, 1998, Virginia N. Campbell and her daughter, Kristina Campbell, were driving home in separate vehicles on Parish Road 2 in Webster Parish, Louisiana. Without the benefit of any warning signs, Virginia, who was traveling at approximately 40 m.p.h., encountered in a curve a patch of gravel that was approximately four to five inches deep. As a result of the gravel, Virginia lost control of her vehicle and crashed into the ditch, colliding with a stump. The vehicle sustained substantial damage and the airbags deployed in the collision. Photographs entered *172 into evidence showed that she had abrasions on her knees, arms, neck, and face immediately after the collision.
Kristina was traveling approximately four "car lengths" behind her mother, and she also lost control of her vehicle when she encountered the gravel. Although Kristina's vehicle was not damaged, it spun around and finally stopped in the ditch across the road from where Virginia's car had stopped. Kristina next exited her vehicle and ran across the road to check on her mother. Kristina further testified that she saw Virginia fall out of the car onto the ground, but there is no evidence in the record that Virginia was unconscious when she "fell out." In fact, Virginia testified that she did not think that she had "passed out."
Kristina then called her father, Don, who is also a trooper for the Louisiana State Police. He arrived at the scene of the accident, took some photographs which were subsequently admitted into evidence, and then drove Virginia to the hospital. Virginia was not admitted into the hospital, but she was advised to see her family physician. Virginia's primary injury was to her back and she continued to experience pain through the time of trial. Kristina, on the other hand, received no medical attention, but she testified that her entire body was sore for several days.
Prior to the accident on that same day at approximately three or four o'clock p.m., a road crew of the Police Jury placed the gravel onto the road. Although the Police Jury admitted that it should have erected warning signs, it took no steps to warn traffic of the freshly laid gravel.
After a trial on the merits, the trial court awarded Virginia $11,101.35 in special damages and $75,000 in general damages. It further awarded Kristina $5,000 in general damages and $15,000 in damages to Don for loss of consortium. It is from this judgment that the Police Jury appeals, asserting as error the trial court's failure to place comparative fault on Virginia and Kristina and the excessive amount of the award for damages. In answer to the appeal, the plaintiffs allege that the amounts of the damage awards were inadequate and that the trial court erred in failing to award bystander damages to Don, Kristina, and Virginia.

Discussion
A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Stobart v. State Through Dept. of Transp. & Development, 617 So.2d 880 (La.1993); Rosell, supra.
In its first assignment of error, the Police Jury argues that the trial court erred in not finding Kristina and Virginia comparatively at fault. The law of comparative negligence is applicable to situations involving automobile accidents. Ortigo v. Merritt, 488 So.2d 1051 (La.App. 2d Cir.1986). The allocation of fault is a factual determination subject to the manifest error rule. Hundley v. Harper Truck Line, Inc., 28,613 (La.App.2d Cir.9/25/96), 681 So.2d 46; and Baughman v. State, Dept. of Transportation and Development, 28,369 (La.App.2d Cir.5/8/96), 674 So.2d 1063, writ denied 96-1882 (La. 11/1/96), 681 So.2d 1260 (where no fault was attributed to plaintiff's decedent who lost control of his vehicle after hitting a three-inch drop-off in the asphalt without warning).
The evidence adduced at trial in this case showed that Virginia and Kristina were not speeding and there were no *173 warning signs to alert them of the hazard. Furthermore, the accident occurred at approximately 6:00 p.m. in a curve on a rural road that was lined with trees. Thus, there were shadows on the road, making it very difficult for a person to see the hazard. In addition, the plaintiffs were very familiar with the road, had driven on it earlier that day, and therefore had no reason to anticipate such a hazard.
The Police Jury argues that other drivers must have driven through the gravel without difficulty after the time that the work crew left that area. Such speculative inference is not sufficient to require us to determine that the trial court's finding of no fault by Virginia and Kristina was unreasonable and clearly wrong.
The next assignment of error involves the amount of damages awarded by the trial court. The plaintiffs argue that the damage awards are unreasonably low, whereas the defendants argue that the damage awards are excessive.
When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages. La, C.C. art.1999. Therefore, an appellate court will not disturb an award of damages unless the record clearly shows that the trial court abused its broad discretion in making the award. Wood v. Toys "R" Us, Inc., et al., 28,667 (La.App.2d Cir.9/25/96), 681 So.2d 49.
In reviewing a damages award, an appellate court must first look at the individual circumstances of that case. Hunt v. Safeway Insurance Co., 35,306 (La.App.2d Cir.12/5/01), 804 So.2d 724; Williamson v. St. Francis Medical Center, Inc., 559 So.2d 929 (La.App. 2d Cir.1990). If the trial court's articulated facts reveal that it abused its discretion in setting the amount of damages, only then may an appellate court review prior awards in other cases. Hunt, supra; citing Moody v. Blanchard Place Apartments, 34,587 (La. App.2d Cir.6/20/01), 793 So.2d 281; Williamson, supra.
Additionally, the law is very well settled that the defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Wilson v. National Union Fire Insurance Co. of Louisiana, 27,702 (La.App.2d Cir.12/6/95), 665 So.2d 1252, citing Lasha v. Olin Corp., 625 So.2d 1002 (La.1993). We find this principle applicable to the assessment of the damages to Virginia.
Loss of consortium claims generally have the following seven elements:
1. Loss of love and affection;
2. Loss of society and companionship;
3. Impairment of sexual relations;
4. Loss of performance of material services;
5. Loss of financial support;
6. Loss of aid and assistance; and
7. Loss of fidelity.
Brandao, et al. v. Wal-Mart Stores, Inc., 35,368 (La.App.2d Cir.12/19/01), 803 So.2d 1039, writ denied 02-0493 (La.4/26/02), 814 So.2d 558.
Regarding Virginia's injuries and Don's loss of consortium, the trial court gave the following review:
The Court found plaintiffs' testimony to be credible, honest and straightforward. Mrs. Virginia Campbell reports a history of pain and discomfort in the neck, shoulder, knees, low back, abdomen, and hip as a result of the accident. She also had a complaint of headaches. She was taken to the emergency room at Springhill Medical Center following the accident. Photographs taken at the scene of the accident reveal the *174 external injuries to Mrs. Campbell's face and neck. Over the next three years, she had 14 visits with Dr. Clinton McAlister (orthopedic), 6 visits with Dr. Marco Ramos (neurosurgeon), and 22 visits with Dr. Gary Swart (chiropractor). Dr. McAlister first saw Mrs. Campbell on July 1, 1998 and his impressions were a mild cervical strain and contusion to the left hip. Dr. McAlister last saw her on December 21, 1999 when she still complained of pain in her back and neck and he suggested that she get a second opinion.
Mrs. Campbell saw Dr. Ramos for the first time on June 8, 2000. She had complaints of headaches and pain in her neck, shoulder, arm and back. Dr. Ramos believed that she suffered from lumbar and lumbosacral radiculopathy. Dr. Ramos felt that her low back problems were due to a combination of the aging process and by a traumatic accident such as a motor vehicle accident.
On March 7, 2001, Mrs. Campbell began treatment with Dr. Swart. He diagnosed her with unresolved lumbar sprain-strain, unresolved cervical sprain-strain, lumbar osteoarthritis, and post-traumatic headaches. In his trial testimony, Dr. Swart expressed the opinion that Mrs. Campbell was `probably 50%' as of the date of trial and that she would progress `another 20 to 30%.' Dr. Swart believes she will always have problems and need chiropractic intervention.
The Court heard considerable testimony of the differences in Mrs. Campbell since the accident. Kristina Campbell testified that she and her mother were best friends and always shopped and exercised together prior to the accident. She described her mother as `always happy.' However, after the accident her mother was `completely different' and they no longer shopped together because Mrs. Campbell was `short with people.' Kristina felt she had `lost her best friend' due to the post-accident changes in her mother.
Don Campbell described his wife's positive attitude and upbeat personality prior to the accident. She was very active and enjoyed exercising, traveling and gardening. After the accident, her activity level `went to zero.' She was unable to do household chores, her garden `dried up,' she stopped cooking, their traveling `drastically reduced,' she did not want to talk or do anything and often had crying spells. Although at the date of trial Mr. Campbell felt that her personality was `coming back' and she was learning to live with adjustments, she had never regained her pre-accident self and activity level.
Jan Riser, a friend for twenty years, described Virginia Campbell as `vivacious' prior to the accident and corroborated the drastic changes in her after the accident. One time co-worker, Tracy Randle, testified by deposition that prior to the accident Mrs. Campbell was not one to complain. However, after the accident Mrs. Campbell was obviously in pain and her personality changed.
Virginia Campbell described her condition and adjustments she has had to make. She no longer is able to wear heals [sic] and she hurts at least 3 to 4 times per week in her lower back and neck. The Court noticed her obvious discomfort during the several hours of the trial.
The court awards Virginia Campbell special damages of $9,730.85 for medical expenses, $1,280.50 for mileage for doctor visits, and $90.00 for prescriptions. The Court awards general damages to Mrs. Campbell in the amount of $75,000.00.

*175 Concerning Don Campbell's claim for loss of consortium, it should be noted that the Campbells have been married for 28 years and were high school sweethearts. Mrs. Campbell's date of birth is June 16, 1953. Due to her injuries, Mrs. Campbell's activities drastically changed as outlined above. It became necessary for Mr. Campbell to carry groceries for her and help with the vacuuming, both such tasks being performed solely by his wife prior to the accident. Prior to the accident he was accustomed to coming home from work to the evening meal prepared by his wife. For an extended time after the accident, she stopped cooking altogether. Their weekend trips to Arkansas, Texas and south Louisiana are now significantly reduced due to her back pain. Shared activities such as bowling and hunting have now stopped. The close relationship between Don and Virginia Campbell has been greatly strained as a result of the accident. Accordingly, the Court awards Don Campbell $15,000.00 for loss of consortium.
From the individual circumstances of this case as thoroughly set forth by the trial court, we find no abuse of discretion by the trial court for these awards.
In regard to Kristina's award, the trial court noted that Kristina had not seen a doctor. However, it did note that she was sore "all over" for about a week and that she had nightmares as a result of the accident. The trial court further stated that Kristina continued to have lower back pain after sitting or driving "too long" and that she had also restricted her activities in college as a result of the accident. Additionally, while the trial court's ruling did not directly address Kristina's loss of consortium due to the change in her relationship with her mother, a large portion of the trial court's award may be affirmed on the basis of that loss. Accordingly, we find no abuse of discretion in the award to Kristina.
In the last assignment of error, the plaintiffs argue that the trial court erred in failing to award bystander damages to Kristina and Don pursuant to La. C.C. art. 2315.6, which reads as follows:
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.

* * *
B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.
From our review of the description of the aftermath of Virginia's accident, we agree with the trial court that the experience did not cause Kristina and Don "severe" and "debilitating" emotional distress. Therefore, this assignment of error lacks merit.

Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are *176 assessed to the Webster Parish Police Jury to the extent allowed by La. R.S. 13:5112.
AFFIRMED.