679 So.2d 486 (1996)
Candy Jean DAY, Plaintiff-Appellant,
v.
SILVER OAK CASUALTY, INC., et al., Defendant-Appellee.
No. 28566-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1996.
*487 Travis M. Holley, Bastrop, for Appellant.
Michael S. Coyle, Ruston, for Appellee.
Before WILLIAMS, STEWART and GASKINS, JJ.
WILLIAMS, Judge.
Plaintiff, Candy Jean Day ("Day") appeals a trial court judgment awarding her $6,150.50 in general and special damages plus legal interest and costs for injuries she sustained in an accident when she was a passenger in an automobile insured by the defendant, Silver Oak Casualty, Inc. ("Silver Oak"). The parties stipulated to liability, and the assessment of damages was the sole issue before the trial court. For the reasons expressed, we amend the trial court's judgment and as amended, we affirm.

FACTS
On June 9, 1994, Day and her minor child were guest passengers in a car owned by Joyce Pace and driven by Brandy Nicole Pace. The defendant, Silver Oak, was Pace's liability insurer. The Pace vehicle was traveling south on North Washington Street in Bastrop when it struck the rear of another southbound vehicle stopped at a red light.
Day estimated that the speed of the vehicle in which she was a passenger was not more than twenty miles per hour. She stated she was wearing her seat belt at the time of impact. While her body did not strike anything, the impact jerked her forward and her hands hit the dash. Although Day did not feel any pain at the time of the accident, she had a headache that night and awoke with a stiff neck the next morning. She saw Dr. Guy Roger Billings, a chiropractor, for headaches, numbness in her right arm, and a sharp pain when she turned her head to the right. The injuries made some of her housework and child care more difficult. Specifically, Day testified that she had difficulty mopping, sweeping, and hanging laundry. However, she was assisted by her family members. According to Day, she could not bend to pick up her child and her sleep was disturbed. At the time of trial, she still had to sleep on her side and still had occasional problems.
Day stated that she did not have any neck or arm problems before the accident and that Dr. Billings' treatments were beneficial. She saw the doctor until August 29, 1994 and continued going to him for treatments until October 10, 1994, when he released her. At that time, she continued to experience some pain. She returned a couple of times for recurring pain in her neck and arm. According to Day, she also saw a Dr. Noble for pain in her right shoulder and numbness in her arm. However, on cross examination, Day testified that she saw Dr. Noble for swollen lymph nodes in her neck and did not see him at any other time for neck problems.[1]
*488 Dr. Billings testified that when he first saw Day on June 14, 1994, she complained of pain in her neck and shoulders, headaches, a sharp pain in the temple area, and a burning sensation in her back. His diagnosis was intercostal neuralgia, traumatic cervical strain, sprain with multiple spasms of the cervical spine, thoracic pain, and traumatic lumbar pain with muscle spasms resulting from the automobile accident. Dr. Billings treated plaintiff from June 14 until October 10, 1994, when he released her to return as needed. According to the doctor, Day came back in January of 1995 complaining of neck and shoulder pain. He treated her on three occasions in January for those complaints.
The doctor characterized Day's injury as a mild, minor neck injury which includes mild to moderate soft tissue injury to muscle, tendons, fascia and possibly disc or ligament injuries. He opined that it was not uncommon for people to have a recurrence of symptoms up to a year and beyond. No CAT scans, x-rays or other diagnostic tests were done in this case, because Dr. Billings determined they were unnecessary. The doctor stated that Day's response did not suggest any peripheral nerve damage, nerve compression, or fractures.
Dr. Billings described the various instruments he used in his treatment of Day. He used a spinalator, which is a therapeutic device that enhances circulation of cerebral fluid around the spine and the circulation of blood to the muscles. Dr. Billings testified that he also used diatramine in order to apply rapid penetrating heat to relieve muscle spasms by increasing circulation. Dr. Billings also administered electrical current through muscles to interrupt muscle spasms and reduce pain. Other treatment Dr. Billings prescribed for plaintiff included recommended sleep positions, rest, Tylenol, vitamin therapy, and mild home exercises. The doctor discharged Day on October 10, 1994, because he felt that she had obtained the maximum chiropractic benefit. Dr. Billings opined that any disability suffered by the plaintiff ended August 29, 1994, but that there was a possibility of some lingering partial disability for approximately one year. On cross-examination, Dr. Billings acknowledged that plaintiff had a routine cervical strain which would require conservative treatment. He stated that he hoped Day would fully recover without any disability, but noted that patients do not always fully recover.
Dr. Billings testified that he filed a standard lien against a settlement or judgment in this matter. The lien allowed him to recover reasonable and necessary expenses from the proceeds. He articulated his belief that all the services on his submitted bill were proper and necessary.
Silver Oak filed into evidence the deposition of Dr. Bill Timberlake, a Dallas chiropractor who reviewed the file at the request of the insurance company. According to Dr. Timberlake, the chiropractor's diagnosis was not unusual and was not documented as unusual in degree or complexity. He opined that the information in Day's medical file was not sufficient to document the necessity of treatment or extension of benefits beyond July 20, 1994. This testimony concurred with the opinion he had given in his original report to Silver Oak. Dr. Timberlake explained that his conclusions did not mean that he would have released the plaintiff as of July 20, 1994.
When asked to give an example of a traumatic case unusual in degree or complexity, Dr. Timberlake explained that such a case would involve a patient with elaborate objective and subjective findings upon an examination which included x-rays. Such a patient would also have positive findings on examination indicating soft tissue injury and orthopedic and/or neurological involvement. Day's file did not contain x-rays or neurological exam results from a CAT scan or MRI. Dr. Timberlake opined that, if there had been significant trauma and significant complaint, the failure to obtain x-rays would have been unconscionable. He also testified that sufficient documentation to justify continued treatment of Day beyond July 20, 1994 would have included the aforementioned examinations and the results therefrom.
Dr. Timberlake also indicated that in order to find documentation to support the necessity of vitamins or nutrients, he would need a broadly accepted scientific opinion by health *489 care providers that vitamin therapy was necessary in a neck sprain case. He stated that there was no such opinion in the scientific community. Further, Dr. Timberlake indicated that the file presented to him did not demonstrate the necessity of electrical stimulation. Dr. Timberlake did not expressly disagree with Dr. Billings' statement that symptomatic reoccurrence could appear to worsen during weather changes and could linger for six to twelve months. However, he did not see any file documentation that the degree of trauma in Day's case would support Dr. Billings' conclusions. On cross examination, Dr. Timberlake acknowledged that his opinion could change if he were provided additional information on plaintiff's case and that he did not know if such additional information existed.

DISCUSSION

SPECIAL DAMAGES:
Day contends the trial court erred in reducing the award for the chiropractor's bill by $1,500.00 based upon the conclusion that all the treatment was not reasonable and necessary. We agree.
In Tyler v. Richardson, 476 So.2d 899, 904 (La.App. 2d Cir.1985), writ denied, 478 So.2d 907 (La.1985), this court stated:
The tortfeasor must pay the victim for the cost of unneeded medical treatment of the victim's injuries unless the expense was incurred as a result of the bad faith of the victim. The reason for the rule is that as between the victim and the tortfeasor the basic cause for the excessive expense of treatment is attributable to the party whose fault caused the injury rather than the victim.... This rule requiring the tortfeasor to pay for the overtreatment of the victim applies to excessive treatment of the victim by a chiropractor when the overtreatment is not attributable to the bad faith of the victim. (Citations omitted.)
See also Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2d Cir.1992) and Temple v. Shannon, 505 So.2d 798 (La. App. 2d Cir.1987).
Silver Oak contends the trial court correctly awarded special damages, since only reasonable expenses are recoverable under LSA-R.S. 9:4752, the health care provider's lien on proceeds of a settlement or judgment. Silver Oak asserts that Dr. Timberlake's expert testimony supports the trial court's conclusion that not all of Day's medical expenses were reasonable.
It is not necessary to decide whether the trial judge correctly found that some of Day's treatment was unnecessary and excessive, since the jurisprudence provides that a defendant must pay a plaintiff's medical expenses unless such expenses were incurred in bad faith. Because this record is devoid of any indication that Day incurred excessive medical expenses in bad faith and because the parties have stipulated to Silver Oak's liability, Silver Oak must bear the burden of paying Day's medical expenses. The $1,500.00 reduction of medical expenses is set aside and the judgment is amended to award $5,160.50 in special damages to plaintiff for her chiropractic treatment.

GENERAL DAMAGES:
The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Reck v. Stevens, 373 So.2d 498 (La.1979); Alaywan v. Commercial Union Insurance Company, 625 So.2d 243 (La. App. 2d Cir.1993), writ denied, 93-2658 (La. 2/4/94), 633 So.2d 166. Before an appellate court may disturb an award, the record must clearly reveal that the trial court abused its discretion in making the award, based on the particular individual injured. Only if an articulated analysis of the facts discloses an abuse of discretion is a resort to prior awards in similar cases proper. Graham v. Edwards, 614 So.2d 811 (La.App. 2d Cir.), writ denied, 619 So.2d 547 (La.1993). If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Temple v. Shannon, supra.
Day was awarded $2,500 in general damages. The trial court's Written Reasons For Judgment merely state that the basis for *490 the award was the evidence presented at trial. However, the evidence presented shows that Day experienced considerable pain and that her housework and child care activities were limited as a result of the injuries she sustained in this accident. Day's testimony concerning her injuries and her pain and suffering was fully corroborated by Dr. Billings' testimony. The record also shows that Day required treatment for up to seven months after the accident, and that at the time of trial, more than one year after the accident, Day was still experiencing pain from her injuries. In light of those facts, we conclude that the trial court abused its discretion in fixing an inadequate general damage award.
Since we have determined that the record reveals the trial court abused its discretion in fixing the general damage award, we must increase the award to the lowest amount which is reasonably within the trial court's discretion to award. Temple v. Shannon, supra.
General damage awards made to plaintiffs who sustained somewhat similar injuries and received treatment similar to Day's have ranged from $3,000 to $14,500. In Mathews v. Hanover Insurance Company, 428 So.2d 1273 (La.App. 3rd Cir.1983), the plaintiff sustained injuries to his neck, back, hips and legs. He received chiropractic treatment but continued to have neck pain and headaches during the time of the trial. An award of $14,500 was held not to be an abuse of discretion.
In McCarroll v. Asplundh Tree Expert Company, 427 So.2d 881 (La.App. 1st Cir. 1982), writ denied, 432 So.2d 268 (La.1983), the appellate court affirmed an award of $11,000 to a plaintiff who was treated by a chiropractor for five months for neck pain and headaches. She was later diagnosed by a medical doctor as suffering from chronic cervical strain. However, the doctor felt she should not have any permanent impairment. Her household activities were also curtailed.
The plaintiff in Bruins v. United States Fleet Leasing, Inc., 430 So.2d 386 (La.App. 3rd Cir.1983), had cervical sprain with spasm, low back sprain, and a thumb injury. She testified at trial that she continued to experience pain, and the appellate court held that an award of $4,500 was not excessive.
In Lee v. United States Fidelity & Guaranty Company, 433 So.2d 903 (La.App. 3rd Cir.1983), the plaintiff originally had acute cervical and lumbar strain. Seven weeks after the accident, he still had back spasms, and nine months after the accident, he still had mild back sprain. He testified at trial that his back hurt when he did lifting required by his work as an electrician's helper. The appellate court affirmed an award of $4,000.
The plaintiffs in Tyler v. Richardson, supra, were treated by chiropractors for about seven months. However, the evidence supported the trial court's finding that their soft tissue injuries were minor and only caused discomfort for a few weeks after the accident. The plaintiff with more extensive injuries was awarded $3,750, and the pregnant plaintiff with less severe injuries but with worry and concern for her unborn child was awarded $3,000. This court found that neither award was inadequate.
In Temple v. Shannon, supra, the plaintiff suffered initially from headaches and pain in her neck, back, right shoulder and right arm. Her pain became less severe after three weeks, and she saw a chiropractor for three months. After treatment by the chiropractor, her headaches and back pain eventually ended, but at trial, almost nine months after the accident, plaintiff was still bothered by headaches and pain in her shoulder and neck and involuntary spasms or "drawing up" of her right hand and arm. Plaintiff's injuries caused her to require help in her retail furniture business. This court amended a $1,200 general damage award to an award of $3,500.
After reviewing the evidence in the record of this case, and considering the awards made in prior cases, we find that $3,500 is the lowest amount that a trier of fact could have awarded Day for her pain and suffering. Consequently, we amend the trial court's judgment to increase the general damage award to that amount.

CONCLUSION
The judgment of the trial court in favor of Candy Jean Day, and against Silver Oak *491 Casualty, Inc., is amended to increase the special damage award to $5,160.50. The general damage award of $2,500.00 is hereby increased to $3,500. Costs are assessed to the defendant, Silver Oak Casualty, Inc.
AMENDED and AFFIRMED AS AMENDED.
NOTES
[1] Charges incurred from Day's visit(s) to Dr. Noble are not at issue in this case.