694 So.2d 585 (1997)
Mary DIXON, Individually and on Behalf of Her Minor Daughter, Brittney Dixon, Plaintiffs-Appellees,
v.
Dorothy and Johnny TILLMAN, Anthony Williams and Safeway Insurance Company, Defendant-Appellant.
No. 29483-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1997.
*586 Tracy L. Oakley, Ruston, for Defendant-Appellant.
Samuel Thomas, Tallulah, for Plaintiffs-Appellees.
Before HIGHTOWER, BROWN and PEATROSS, JJ.
PEATROSS, Judge.
In this vehicular collision case, the principal issue is whether defendant Anthony Williams ("Williams") had permission from the owner and named insured, Johnny Tillman ("Tillman"), to use the vehicle. The trial court ruled in favor of the plaintiffs, Mary and Brittney Dixon, and awarded them each $7,500 in general damages in addition to special damages. Safeway Insurance Company ("Safeway"), the insurer of the vehicle, appeals the trial court's ruling and its award of general damages. For the following reasons we amend the general damage awards and affirm the judgment of the trial court.

FACTS
On July 6, 1995, Ms. Dixon and her eight-year-old daughter, Brittney, were traveling south on North Chestnut Street in Tallulah, Louisiana. Williams was traveling west on East Levee Street and came to the stop sign at the intersection of North Chestnut and East Levee. Failing to yield to the approaching traffic, Williams entered the intersection and was struck by the Dixon vehicle. There is no dispute that the negligence of Williams was the sole cause of the accident.
The truck driven by Williams belonged to Johnny and Dorothy Tillman. On the morning of the accident, Tillman, after working *587 the night shift at Ameristar Casino, stopped at Mary Carter's house to get some rest before driving home. Tillman testified that he did this often and that he was dating Ms. Carter at the time. Tillman left his truck outside Ms. Carter's home and placed his keys on the dresser in the bedroom before falling asleep. Tillman was awakened when someone called and informed him that his truck had been involved in an accident.
Although Tillman knew Williams, as Williams was a friend of Ms. Carter's son, he testified that he never gave Williams permission to drive his truck on the day of the accident and that Williams had never driven his truck prior to the day of the accident. Tillman also testified that he did not give anyone in the Carter household permission to drive his truck. The officer who investigated this accident, however, testified that he had seen Williams driving Tillman's truck on one occasion prior to the accident.
As a result of the accident, Ms. Dixon suffered left arm and shoulder pain, and Brittney suffered from pain in her left leg. They both went to the emergency room immediately after the accident. Dr. Lawrence Chenier treated Ms. Dixon and Brittney for approximately two months after the accident.
The trial court found that Williams was driving the truck with the permission of Tillman and that Tillman was not completely truthful to the court when he testified that he filed a complaint about the stolen vehicle on the day of the accident and that he had never given Williams permission to use the truck prior to the accident. The trial court granted special damages to Ms. Dixon in the amount of $636.10 in medicals and $500 for the deductible portion of the damage to her car, and general damages in the amount of $7,500. The trial court granted special damages to Brittney in the amount of $791.80[1] and general damages in the amount of $7,500. Safeway appeals this judgment.

DISCUSSION

Implied Permission
On appeal, Safeway argues that the trial court committed manifest error in holding that Williams had the implied permission of Tillman to operate the vehicle at the time of the accident. Relying on the omnibus clause in the insurance policy issued to Tillman, Safeway asserts that there is no coverage under this policy since the evidence did not prove that Williams had the express or implied permission of the named insured to operate the vehicle.
A plaintiff who seeks to establish coverage under the omnibus clause of an automobile liability policy must prove that the vehicle was being used with the express or implied permission of the named insured. Perkins v. McDow, 615 So.2d 312 (La.1993). The fact of permission must be proved by a preponderance of the evidence without the aid of any presumptions. Manzella v. Doe, 94-2854 (La. 12/8/95), 664 So.2d 398; Norton v. Lewis, 623 So.2d 874 (La.1993). Generally, implied permission "arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle." Francois v. Ybarzabal, 483 So.2d 602, 605 (La.1986); Manzella, supra.
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State Through the Department of Transportation and Development, 617 So.2d 880 (La.1993). In order for an appellate court to reverse the trial court's finding of fact, it must find 1) that a reasonable factual basis does not exist for the finding of the trial court, and 2) that the record establishes that the finding is clearly wrong. Stobart, supra.
Based on our review of the entire record, we cannot say that the trial court was clearly wrong in assessing the credibility of the witnesses and determining that Williams had permission to drive the truck. The trial court found that Tillman's testimony was not credible and that Williams had used the truck in the past. This finding is based on the investigating officer's testimony that he had observed Williams driving the vehicle on at least one prior occasion. Once implied *588 permission is granted by the insured, any subsequent changes in the character or scope of the use do not require specific consent of the insured. Manzella, supra at 402. The trial judge, therefore, was reasonable to conclude that Williams had Tillman's implied permission to use the truck on the date of the accident. This result furthers the public policy of extending omnibus insurance coverage to protect innocent accident victims. Id. at 402.
In further support of the trial court's finding of implied permission, we note that Tillman had a child by Ms. Carter and that he slept regularly at her house. Tillman testified that he had known Williams for about three or four years and that Williams usually came to Mary Carter's house with her son. We also note that while Tillman testified that he reported the truck stolen on the day of the accident, July 6, 1995, Major Janie Jones of the Tallulah Police Department testified that the affidavit and arrest warrant for Williams were dated August 1, 1995.

General Damages
Safeway asserts that the trial court's general damage award to the plaintiffs of $7,500 each is excessive. In assessing damages in cases of offenses, quasi-offenses and quasi-contracts, much discretion is left to the judge or jury. La.C.C. art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Phiratsamy v. Pipes, 27,209 (La. App.2d Cir. 08/23/95), 660 So.2d 172. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Higginbotham v. Ouachita Parish Police Jury, 513 So.2d 537 (La.App. 2d Cir.1987). If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Day v. Silver Oak Cas., Inc., 28,566 (La. App.2d Cir. 8/21/96), 679 So.2d 486; Temple v. Shannon, 505 So.2d 798 (La.App. 2d Cir. 1987).
The evidence in the present case does show that Ms. Dixon and Brittney did suffer injuries as a result of the accident. After the collision, they were transported by ambulance to the emergency room. Ms. Dixon complained of pain in her left arm and shoulder and Brittney complained of pain in her lower left leg. On July 11, 1995, Ms. Dixon and Brittney visited Dr. Chenier. He diagnosed Ms. Dixon as suffering from left arm and shoulder sprain and prescribed pain medication and muscle relaxers. Dr. Chenier diagnosed Brittney as suffering from a left leg sprain and prescribed Tylenol III. Ms. Dixon testified that she suffered from pain at her job at Ameristar Casino when she lifted heavy items such as bags of coins; however, she did not miss any work because of her injuries. Brittney testified that she was unable to play with her friends immediately after the accident because of her injured leg. Ms. Dixon and Brittney each visited Dr. Chenier a total of three times and at the last visit on September 21, 1995, they reported that their conditions had been resolved.
After reviewing the entire evidence, we conclude that the trial court abused its broad discretion in awarding each of the plaintiffs $7,500 in general damages. Ms. Dixon and Brittney suffered from sprains and their conditions had been resolved in a little over two months. They were both treated with medication and no surgery was required; neither Ms. Dixon nor Brittney suffered any residual impairment. We conclude that $5,000 is the highest reasonable amount which adequately compensates Ms. Dixon for her damages and that $3,000 is the highest reasonable amount which adequately compensates Brittney for her damages. See Day v. Silver Oak Cas., Inc., supra, where this court increased a general damage award from $2,500 to $3,500 to compensate the plaintiff for pain and suffering encountered as a result of soft tissue injuries which caused "considerable" pain, interfered with her housework and child care activities, required treatment for up to seven months and still caused pain one year after the accident. See also Miller v. Leonard, 607 So.2d 737 (La.App. 1st Cir.1992), where the court found that a general damage award of $5,000 was *589 sufficient to compensate the plaintiff who suffered pain in his left shoulder and was diagnosed with contusions to the anterolateral aspect of the left shoulder joint over the biceps tendon and deltoid muscle; and plaintiff's condition had not been resolved until a year after the accident.

CONCLUSION
For the above reasons, the trial court's judgment is amended to reduce the amount of the award for Ms. Dixon's general damages to $5,000 and to reduce the amount of the award for Brittney's general damages to $3,000. In all other respects, the judgment is affirmed. The costs of this appeal are assessed equally between the parties.
AMENDED AND AFFIRMED.
HIGHTOWER, J., concurs in part and dissents with written reasons.
HIGHTOWER, Judge, concurring in part; dissenting in part.
While agreeing that the general damage award demands reduction, I conclude that $3,500 for the mother and $1,700 for the daughter constitute the highest awards supported by this record for the minor injuries involved. Within two months, as observed by the majority, plaintiffs' conditions fully resolved with minimal treatment. After their emergency room examination, Ms. Dixon and Brittney each saw the doctor only three times.
NOTES
[1] Ms. Dixon's and Brittney's medical costs each include a $360 bill for ambulance services.