709 So.2d 878 (1998)
Mary COOPER, Plaintiff-Appellee,
v.
BORDEN, INC., Defendant-Appellant.
No. 30292-CA.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1998.
*880 Hayes, Harkey, Smith & Cascio by Donald C. Douglas, Jr., Monroe, for Defendant-Appellant.
Loomis & Dement by Jeffrey L. Dement, Monroe, for Plaintiff-Appellee.
Before MARVIN, C.J., and WILLIAMS and PEATROSS, JJ.
PEATROSS, Judge.
In this personal injury action resulting from the ingestion of milk contaminated with penicillin, the defendant, Borden, Inc. ("Borden"), appeals the adverse judgment of the trial court which awarded the plaintiff, Mary Cooper ("Cooper"), general damages in the amount of $1,500, special damages in the amount of $310 and expert witness fees in the amount of $600. Borden assigns as error: (1) the trial court finding Borden liable for damages in light of evidence that Borden was in compliance with federal regulations requiring the testing of milk; (2) the trial court finding that the gallon of milk from which Cooper drank was contaminated with penicillin when it left Borden's possession; (3) the trial court finding that Cooper offered sufficient credible evidence to carry her burden of proof; (4) the trial court finding that Cooper suffered an allergic reaction to penicillin when no doctor had diagnosed her with an allergy to penicillin and her treating physician allegedly did not diagnose her as having suffered an allergic reaction; (5) the trial court awarding Cooper medical costs when those expenses were paid by Medicare and the United States of America is allegedly legally subrogated to those payments; (6) the trial court awarding Cooper unreasonably high damages. For the following reasons, we affirm the judgment of the trial court.

FACTS
On November 9, 1994, Cooper purchased two gallons of milk from Collins Food Store in Bastrop, Louisiana. The milk was processed and sold to Collins Food Store by Borden. After consuming the milk, Cooper's body became swollen and covered with whelps. Cooper returned the container with the remainder of the milk to Collins Food Store, and the store forwarded it to Borden. Borden tested the milk and the test indicated the presence of penicillin.
In October 1995, Cooper brought suit against Collins Food Store and Borden, claiming that she was allergic to penicillin and had suffered a severe allergic reaction after drinking the milk. The matter proceeded to a bench trial and, after the close of Cooper's case, the defendant grocery store moved for and was granted an involuntary dismissal. Borden moved for a directed verdict, which was denied. The trial court found for Cooper on the issue of liability and issued a judgment awarding her general damages of $1,500 and special damages of $310. Borden appeals from this judgment.

DISCUSSION

Federal Preemption
Borden argues that compliance with the Pasteurized Milk Ordinance, 15 C.F.R. *881 § 58.133, immunizes it from state law tort claims for damages. Cooper contends that this is an affirmative defense which Borden was required to raise in its answer and it failed to do so. Borden alleges that it presented evidence on this issue at trial without objection and, thus, enlarged the pleadings. In reply, Cooper claims that Borden did not present sufficient evidence at trial to allow for an enlargement of the pleadings or to show the requirements of the regulation and compliance therewith.
A defendant must specifically plead affirmative defenses in its answer. La. C.C.P. arts. 1003 and 1005. An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on the merits. Webster v. Rushing, 316 So.2d 111 (La.1975); Shrader v. Life General Sec. Ins. Co., 588 So.2d 1309 (La. App. 2d Cir.1991).
All parties agree that federal preemption is an affirmative defense and Borden agrees that the defense was not raised in its answer. Borden, however, claims that sufficient evidence was introduced at trial, without objection by Cooper, so as to enlarge the pleadings. The general rule is that pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by the pleadings and, hence, would have been excluded if objected to timely. La. C.C.P. art. 1154; Webster, supra; Shrader, supra.
In the present case, the brief mentioning of a federal regulation at trial was not sufficient to enlarge the pleadings to incorporate the affirmative defense of federal preemption. The testing procedures went to the issue of what steps Borden took to fulfill its duty of providing its consumers with a safe product. At no time during the trial or in any pleading did Borden argue that it was immune from liability due to its compliance with the federal regulation. To allow Borden to raise this defense for the first time on appeal would defeat the purpose of requiring pleading of special defenses, i.e., to give plaintiffs fair and adequate notice of the nature of any defenses. This assignment is without merit.

Cooper's Burden of Proof
Borden contends that Cooper did not carry her burden of proof at trial for a number of reasons. First, Borden argues Cooper failed to prove that she was allergic to penicillin and that she actually suffered an allergic reaction to penicillin in this case. Borden further claims that Cooper failed to show the integrity of each link in the chain of custody of the milk and, thus, did not prove that the milk contained penicillin when it left Borden's control.
To establish the liability of a manufacturer for damages which result from the consumption of prepared foods, the plaintiff must prove: 1) that the defendant's product contained a deleterious substance; 2) that the substance was consumed by the plaintiff; and 3) that as a result of consumption, the plaintiff sustained injury. LeBlanc v. Louisiana Coca-Cola Bottling Co., 221 La. 919, 60 So.2d 873 (1952); Ard v. Kraft, 540 So.2d 1172 (La.App. 1st Cir.1989).
At trial, Cooper testified that when she was nine years old she suffered an allergic reaction which put her in the hospital, unconscious, for two days. She was informed at that time that she was allergic to penicillin. Cooper stated that since that time she has notified all of her doctors that she was allergic to penicillin. Dr. Bruce Wheeler, Cooper's family physician since the early 1980's, testified that it is normal for physicians to rely on patient histories regarding allergies and that, since allergy testing can be very dangerous, he does not normally subject his patients to such testing. Dr. H.F.M. Garrett, who treated Cooper for her illness, testified that a diagnosis of a penicillin allergic reaction would be consistent with Cooper's history and symptoms. Dr. Garrett also stated that penicillin in the milk was the most probable cause of Cooper's condition. We conclude that the evidence sufficiently shows that Cooper was allergic to penicillin and that she did, in fact, suffer an allergic reaction to penicillin.
*882 Borden claims that Cooper did not prove the penicillin was present in the milk at the time it left Borden's control. Borden bases this argument on the fact that a control sample kept by Borden allegedly tested negative for the presence of penicillin, and that Cooper gave inconsistent testimony regarding the condition of the gallon of milk when she went to fill her glass. Cooper contends that she is not burdened with the impossible task of showing the integrity of each link in the chain of custody of the product from the time it left Borden's control until the time she ingested it.
This court, in Hollis v. Ouachita Coca-Cola Bottling Company, 196 So. 376 (La.App. 2d Cir.1940), stated that a manufacturer of bottled beverages is chargeable with knowledge of the contents of the bottles which it distributes and sells for public consumption; and the manufacturer is liable for all damages occasioned if ill effects are suffered by a person drinking such contents, as originally prepared and distributed. Furthermore, the proof offered by the plaintiff must be carefully scrutinized because the manufacturer usually has no means of disproving by eyewitnesses the occurrence of the alleged accident. This is particularly true when extreme care in the preparation of the bottled beverage has been shown, as in the instant case. Hollis; supra.
Cindy Champayne, the quality control supervisor for Borden, testified that after testing Cooper's gallon of milk, she retrieved the control sample that came from the same batch as Cooper's and tested it for the presence of penicillin. It was her testimony and that of Brenda Carr, a Borden lab technician, that the sample tested negative for the presence of penicillin. The results from the test, however, were not available at trial because Borden's policy is to throw this information away after one year.
While the trial judge did not state specific reasons for his judgment, he did note during trial that he was troubled by the absence of the negative test results. It was within the trial court's discretion to determine what weight to give the testimony regarding this test result. Borden had been given sufficient notice of the problems with this gallon of milk so that it could have made an exception to its regular procedure of discarding this information after one year. In addition, Borden acknowledged that Cooper's gallon of milk did contain penicillin. The trial court did not abuse its discretion in determining what weight to give the testimony regarding the discarded test results.
While Cooper testified at trial that the gallon of milk was unopened when she went to fill her glass, she stated during her deposition that the gallon had been previously opened by someone in her family. According to Borden, this shows that the gallon of milk was not in the same state as when it was originally prepared and distributed. Sheila Cooper and Annie James, daughters of Carter, both testified that they saw their mother open the gallon of milk just before she got sick. The trial court, within its discretion, made a credibility call and obviously believed the testimony of Cooper and her daughters regarding the condition of the gallon of milk prior to her drinking the milk and getting sick. We do not find error with the trial judge's conclusion.

Collateral Source Rule
Borden contends that Cooper should not recover her $310 in medical expenses because Medicare paid this cost. Borden acknowledges the collateral source rule, but contends it is inapplicable in the present case because the United States has a right of subrogation.
Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. Williamson v. St. Francis Medical Center, Inc., 559 So.2d 929 (La.App. 2d Cir.1990). This rule has been applied to hold that the plaintiff's recovery cannot be diminished by amounts paid by Medicare. Williamson, supra.; Womack v. Travelers Insurance Co., 258 So.2d 562 (La.App. 1st Cir.1972), writ denied, 261 La. 775, 260 So.2d 701 (1972); Weir v. Gasper, 459 So.2d 655 (La.App. 4th Cir.1984), writ denied, 462 So.2d 650 (La. 1985). In the instant case, therefore, Cooper *883 is entitled to recover the amount of her medical expenses which were paid by Medicare.

Quantum
Borden contends that the $1,500 in general damages is an abuse of the trial court's discretion in light of the evidence presented at trial. General damages are those which may not be fixed with pecuniary exactitude. They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment or other losses of lifestyle which cannot be definitely measured in monetary terms. Killough v. Bituminous Cas. Corp., 28,392 (La.App.2d Cir. 5/8/96), 674 So.2d 1091; Kessler v. Southmark Corporation, 25,941 (La.App.2d Cir. 9/21/94), 643 So.2d 345.
In assessing damages in cases of offenses, quasi-offenses and quasi-contracts, much discretion is left to the judge or jury. La. C.C. art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trier of fact abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Dixon v. Tillman, 29,483 (La.App.2d Cir. 5/7/97), 694 So.2d 585. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Dixon, supra. If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Dixon, supra; Day v. Silver Oaks Cas., Inc., 28,566 (La.App.2d Cir. 8/21/96), 679 So.2d 486.
We conclude that the trial judge did not abuse his discretion in assessing $1,500 in general damages. After drinking the milk, Cooper began itching and broke into a rash, which was accompanied by whelps. She stated that she began vomiting and was unable to sleep that night. The next day, she went to Dr. Garrett who gave her a steroid shot and a prescription for medication. Cooper visited Dr. Garrett five times, the last visit occurring on January 6, 1995, for treatments of symptoms associated with the allergic reaction.

CONCLUSION
For the above reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to the appellant.
AFFIRMED.