JAMES F. McKAY III, Chief Judge.
1 defendants, Karyl Pierce Paxton (“Ms. Paxton”), Pierce Paxton Design Studios, L.L.C. (“PPDS”), and Karyl Paxton Design, Inc. (“KPD”), appeal the trial court’s April 16, 2012 judgment in favor of plaintiff, Christopher J. Sacco (“Mr. Sacco”), awarding him damages for breach of fiduciary duty, and breach of partnership agreement and/or joint venture agreement.[1]
The main dispute in this lawsuit is whether a partnership or joint venture agreement existed between Mr. Sacco and Ms. Paxton. A written partnership agreement was never executed. Mr. Sacco contends that he entered into an oral partnership agreement with Ms. Paxton in 1997, in which he agreed to help grow her original business, Pierce Paxton Collections, in exchange for an equity partnership. He alleges that the agreement was that he would contribute time and labor, or in his words, “sweat equity,” in exchange for a partnership interest, which Ms. Paxton offered because she could not afford to pay him at the time. He further contends that this alleged partnership agreement extended to companies formed later by Ms. Pax-ton, i.e., PPDS (created in 2000), and KPD (created in 2003). Conversely, Ms. Paxton contends that Mr. Sacco was an employee or contractor [¡¡who worked for her and her companies. She alleges that she compensated Mr. Sacco for all of his work but never offered him a partnership interest in any of her businesses.
In the 1990’s, Ms. Paxton operated an interior design business called Pierce Pax-ton Collections, first in Jackson, Mississippi, and later in New Orleans, Louisiana, where she met Mr. Sacco. In late 1997, Ms. Paxton asked Mr. Sacco to work with her at Pierce Paxton Collections. At that time, Ms. Paxton and Mr. Sacco were involved in a romantic relationship. They never married so no community property regime was ever established.
Ms. Paxton created PPDS in 2000. Mr. Sacco’s name was not included in the documents forming this business entity. Through PPDS, lighting fixture designs were to be marketed to stores on a wholesale basis. The designs were successful, and as a result, PPDS generated significantly more revenue than Pierce Paxton Collections.
In 2003, Ms. Paxton created KPD, which engaged in the licensing of lighting fixture designs. Mr. Sacco’s compensation increased as PPDS and KPD became more profitable. However, the relationship between Ms. Paxton and Ms. Sacco deteriorated as Mr. Sacco asserted his alleged status as an equity partner in PPDS and KPD. Attempts to resolve the issue of Mr. *216 Sacco’s role in Ms. Paxton’s companies were unsuccessful. In late 2003, when Ms. Paxton was out of the country, Mr. Sacco allegedly downloaded computer files, took Ms. Paxton’s design sketchbooks from the office, and wrote several PPDS checks to himself in excess of $40,000.00. When Ms. Paxton discovered Mr. Sacco’s actions, she fired him.
Shortly thereafter, on January 9, 2004, Mr. Sacco filed the instant lawsuit against Ms. Paxton, PPDS and KPD. The petition alleges that when Mr. Sacco and |sMs. Paxton first discussed working together in late 1997, Ms. Paxton suggested that they join as partners in her business, Pierce Paxton Collections, and pool resources, time and energy to grow and expand Pierce Paxton Collections. He further alleged that his business partnership with Ms. Paxton extended to the new business entities, PPDS and KPD. Mr. Sacco alleged that from 1998 until the filing of his lawsuit, the two worked together to develop the design businesses. He alleged that he provided computer graphics, handled all accounting and checking accounts and most of the business documents. He further alleged that he was designated “managing partner” of the businesses, dealt with customers and operated the manufacturing process. He stated that during this time, he and Ms. Paxton pooled their time and resources “in hopes of splitting future profits.” According to Mr. Sacco, it was only after the businesses started becoming more profitable and the parties’ personal romantic relationship ended that Ms. Pax-ton attempted to force Mr. Sacco out of the businesses, insisting that he change his status from partner to employee and threatening to deny him profits of the businesses if he refused to do so. He asked for a declaratory judgment ruling that he and Ms. Paxton had a partnership or joint venture, and that he was entitled to 50% ownership interest in all profits, “insofar as Sacco and Paxton have no contrary agreement to split profits unevenly.” He also asked that Ms. Paxton be held liable to him for breach of contract and breach of fiduciary duty for her efforts to harm his rights to revenues generated by their alleged partnership.
Ms. Paxton, PPDS and KPD answered the petition, denying that Ms. Paxton ever offered Mr. Sacco a partnership in any of her businesses or that he ever worked with her in the capacity of a partner. She also specifically denied that they had an agreement to split profits or to grant Mr. Sacco joint ownership and control |4of PPDS. She stated that she discussed working with him, but with Mr. Sacco working on a salaried basis only. While she admitted entrusting Mr. Sacco with the internal accounting of the businesses, including his authority to sign on certain accounts, she denied that he was ever charged with the overall management of the businesses, and stated that his listing himself as “partner” or “managing partner” on any document relating to her businesses was unauthorized. She stated that she formed PPDS as a limited liability company and was its sole member.
In addition to the answer, the defendants filed a reconventional demand against Mr. Sacco, alleging that shortly before Ms. Paxton terminated Mr. Sacco’s employment in January 2004, he removed checking account statements, cancelled checks, and invoices of PPDS without authority. Additionally, Mr. Sacco withdrew a significant amount of funds from the PPDS accounts without authority. She further alleged that in addition to improperly withdrawing funds from PPDS, Mr. Sacco attempted to disrupt and interfere with contractual relationships that PPDS had with certain vendors and customers. Ms. Paxton alleged that Mr. Sacco’s actions constituted conversion and trespass. *217 She asked for damages, and also asked for injunctive relief for the actual or threatened misappropriation of trade secrets pursuant to the Louisiana Uniform Trade Secrets Act.
Following a trial on the merits, the jury concluded that Ms. Paxton entered into a partnership or joint venture agreement with Mr. Sacco, breached that agreement and knowingly breached her fiduciary duty to him. Judgment was rendered in favor of Mr. Sacco and against Ms. Paxton, PPDS, and KPD in the amount of $1,153,673.00 for breach of fiduciary duty, and breach of a partnership agreement and/or joint venture agreement, plus interest from date of judicial demand and costs of the proceedings. The jury also found that Mr. Sacco |ficommitted a conversion of property that belonged to Ms. Paxton, PPDS and/or KPD. The trial court adopted the jury’s verdict on the issue of conversion, and rendered judgment in favor of Ms. Paxton, PPDS and KPD, and against Mr. Sacco, in the amount of $22,000.00, plus interest from date of judicial demand. The defendants’ motions for new trial and judgment notwithstanding the verdict were denied.
The defendants now appeal the portion of the trial court judgment awarding Mr. Sacco, damages for the defendants’ breach of fiduciary duty and breach of partnership agreement and/or joint venture agreement. The portion of the judgment regarding the award to the defendants for Mr. Sacco’s conversion of property has not been appealed by any of the parties.
On appeal, the defendants present five assignments of error:
1)The trial court erred in instructing the jury regarding the requirement that partners agree to share losses;
2) The jury erred in finding that the legal criteria for recognition of a Louisiana partnership were established by the record evidence;
3) The jury’s verdict and the trial court’s judgment violates the United States Copyright Act of 1976, 17 U.S.C. § 101 et seq.;
4) The damages awarded are not supported by the record evidence; and
5) There is no legal basis for a judgment against Pierce Paxton Designs Studio, L.L.C. or Karyl Paxton Design, Inc.[2]
Our law defines a partnership as a “juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.” La. C.C. art. 2801. In Darden v. Cox, 240 La. 310, 123 So.2d 68, 71 (1960), the Supreme Court set forth three criteria for establishing an oral commercial partnership agreement: 1) the parties must have mutually consented to form a partnership and to participate in the profits which may accrue from property, skill or industry, furnished to the business in determined proportions by them; 2) all parties must share in the losses as well as the profits of the venture; and 3) the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest.
It is also well settled that the prerequisites for establishing a partnership are that both parties intend to have a business relationship between them and that the relationship has all the major characteristics of a partnership. Porter v. Porter, 36,007, p. 14 (La.App. 2 Cir. 6/12/02), 821 *218 So.2d 663, 671; LaRocca v. Bailey, 2001-0618, p. 6 (La.App. 3 Cir. 11/7/01), 799 So.2d 1263, 1268; Butler v. Sudderth, 2000-1950, p. 10 (La.App. 5 Cir. 4/24/01), 784 So.2d 125, 130. These criteria require findings of fact. Medline Industries, Inc. v. All-Med Supply & Equipment, 94-1504, p. 5 (La.App. 1 Cir. 4/7/95), 653 So.2d 830, 833.
The standard of review for a factual finding is the manifestly erroneous or clearly wrong standard. To reverse a fact finder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Stobart v. State, through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Id. If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not ^reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-883. Accordingly, where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous. Id. at 883. Further, when a fact finder’s determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). The credibility determinations of the trier of fact are subject to the strictest deference under the manifest error-clearly wrong standard. Theriot v. Lasseigne, 93-2661, p. 9 (La.7/5/94), 640 So.2d 1305,1313.
With regard to the first assignment of error, the jury instruction to which the defendants objected was as follows: “The term losses’ for purposes of the general rule is not limited to monetary losses, but includes time expenditures and out-of-pocket expenses, especially where one party to the venture furnishes property and the other, only services.” While neither the Louisiana Supreme Court nor this Circuit have ever specifically defined “losses” in such a way for purposes of determining the existence of a partnership or joint venture, the language in the jury instruction at issue was included in the Third Circuit case of Latiolais v. BFI of Louisiana, Inc., 567 So.2d 1159, 1162 (La.App. 3 Cir.1990).[3]
Trial courts are given broad discretion in formulating jury instructions, and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. Wooley v. Lucksinger, 2009-0571, p. 81 (La.4/1/11), 61 So.3d 507, 574 (citing Adams v. Rhodia, Inc., 2007-2110, p. 6 (La.5/21/08), 983 So.2d 798, 804). Even though decisions of other circuits in Louisiana are not controlling authority as to this Court, but instead are merely persuasive authority, we cannot say that the trial court abused its discretion in including the jury instruction at issue. The instruction was a correct statement of the law as stated in the Third Circuit case of Latiolais, supra.
*219 The defendants next argue that the trial court erred in adopting the jury’s finding that the legal criteria for recognition of a Louisiana partnership were established by the record evidence. We disagree.
Pursuant to the criteria set forth in Darden, supra, Mr. Sacco had the burden to prove: 1) the parties mutually consented to form a partnership and to participate in the profits which may accrue from property, skill or industry, furnished to the business in determined proportions by them; 2) the parties shared in the losses as well as the profits of the venture; and 8) the property or stock of the enterprise formed a community of goods in which each party had a proprietary interest.
Mr. Sacco testified that in December of 1997, he and Ms. Paxton had been dating about a year when she offered him a sweat-equity ownership interest in her business, explaining that she needed help to grow the business, but could not afford to pay him. At the time, Mr. Sacco stated that he was working as an investigator for a law firm making approximately $30,000.00 per year. He quit that job to work with Ms. Paxton. Mr. Sacco testified that he was excited about the prospect of growing the business into something big. Mr. Sacco stated that in order to build sweat equity, he only took small amounts in compensation that the business could afford. Mr. Sacco was allowed to write his own checks. The business paid most of the personal expenses for Ms. Paxton and Mr. Sacco.
| aMr. Sacco testified that he was involved in every aspect of the business, but he focused on bookkeeping, marketing, and the development of computer aided designs for the company’s products. He explained that the introduction of computerized designs was crucial to the growth of the business. In support of his assertion that a partnership existed, Mr. Sacco presented the testimony of Alan Radin (“Mr. Radin”) and Bruce Roch (“Mr. Roch”).
Mr. Radin testified that he was in the lighting business for over fifty years. He met Mr. Sacco in 2004, at a lighting show in Dallas, Texas and later came to New Orleans to meet with Mr. Sacco and Ms. Paxton to discuss a possible business venture. Mr. Radin testified unequivocally that both Mr. Sacco and Ms. Paxton presented themselves as partners in the lighting design business, and he was given no reason to think otherwise.
Mr. Roch met and became friends with Mr. Sacco in 2000. At the time, Mr. Roch owned a nationally based self-storage company, and Mr. Sacco often asked him for business advice. Shortly thereafter, Mr. Roch also became friends with Ms. Paxton. He testified that Mr. Sacco and Ms. Pax-ton always represented to him that they were business partners. Moreover, he stated that they always introduced themselves as partners to others.
Mr. Roch testified that in late 2002, or early 2003, Mr. Sacco and Ms. Paxton came to his office for business advice. He stated that they wanted “to discuss ways to formalize their partnership agreement to make it a more complete operating agreement in anticipation of a contract that they were working on at the time.” Mr. Roch further testified that he advised them that their partnership should be documented before they embarked on such a large contract. He stated that he was concerned from Mr. Sacco’s standpoint that he was a partner and it wasn’t | ^documented. Mr. Roch testified that he had many conversations with Mr. Sacco over the years about how difficult it was to live on very little income and how much sweat equity Mr. Sacco was putting into *220 the business. Mr. Roch considered Mr. Sacco to be a “very talented designer.”
Mr. Sacco testified that profits picked up in 2001, when a contract with Progressive Lighting was signed. This fact is not in dispute. He stated that in 2002, Ms. Pax-ton began trying to back out of their partnership arrangement. Mr. Sacco explained that in 2003, he was called into a meeting with Ms. Paxton and Bob Winston (attorney/CPA) and was asked to sign an employment agreement. Mr. Sacco refused, and Ms. Paxton did not pursue the matter. Ms. Paxton did not dispute the fact that Mr. Sacco was asked to sign an employee agreement at that time.
Also in 2003, the business entered into a lucrative contract with Bright International through which products would be sold in Home Depot stores across the country. Mr. Sacco testified that at this time, he discovered that Ms. Paxton secretly formed a new company, KDP, and was working to put the Bright International contract with KDP. This fact is not in dispute. Mr. Sacco presented an email from Bright International’s lawyer stating that he was not comfortable changing the contract to the new company.
Mr. Sacco further testified that he uncovered Ms. Paxton’s personal journal, wherein she wrote: “It was agreed from the beginning that he [Mr. Sacco] would take a small salary in turn for sweat equity in the business.” Ms. Paxton’s journal was introduced into evidence.
Ms. Paxton denied that she ever agreed to make Mr. Sacco a partner. She testified that she told him he would have deferred compensation in 1998 and 1999, |nbecause she didn’t have a lot of money, and she would compensate him as the business grew. She stated that her idea of “sweat equity” was deferred compensation.
Ms. Paxton admitted that she allowed Mr. Sacco to write himself checks. She admitted that the business paid most of his personal expenses, and that they both used Mr. Sacco’s personal credit card for businesses. Ms. Paxton stated that she always considered Mr. Sacco to be an employee, but acknowledged that he was not listed as an employee on tax documents.
In support of her argument that Mr. Sacco was not a partner, Ms. Paxton presented the testimony of Henry E. Carri-gee, Jr. (“Mr. Carrigee”), the Certified Public Account for the business in 2002 and 2003. Mr. Carrigee testified that he had no knowledge that Mr. Sacco was Ms. Paxton’s partner. Mr. Carrigee stated that he was never asked to file a partnership tax return.
Ms. Paxton argued that Mr. Sacco should not be considered a partner because he put up no capital. However, that fact is not controlling here. As the court held in Darden, supra at 74,
The circumstance that plaintiff did not contribute to the capital of the partnership at the time he was invited by defendant to become a partner, does not establish that the parties intended that plaintiff was never to have an interest in the partnership’s assets. The Civil Code does not require that all partners make an investment of cash in the partnership at any time.
Ms. Paxton further argued that Mr. Sacco was not a partner because there was no agreement that he would share in the losses of the business. Mr. Sacco testified that although the lines of credit for the business were in Ms. Paxton’s name, Mr. Sacco used his personal credit card for business expenses and allowed Ms. Paxton to use his credit card, even after the parties’ romantic relationship had |12ceased. Ms. Paxton did not dispute this assertion. Mr. Sacco also claimed that his sweat equi *221 ty and the time he expended in the business constituted a sharing of losses on his part. We agree.
Our courts have recognized that an agreement to share losses may be implied from an agreement to share profits. Riddle v. Simmons, 40,000, p. 31 (La.App. 2 Cir. 2/16/06), 922 So.2d 1267, 1287 (citing Latiolais, supra at 1162). Moreover, it is not essential that the parties agree, expressly or impliedly, to share the losses, and when the nature of the undertaking is such that no losses other than time and labor in carrying out the undertaking are likely to occur, the agreement of the parties to divide profits may be sufficient to stamp the undertaking as a joint venture. Id.
Regarding the sharing of profits, it is undisputed that Mr. Sacco was not receiving 50% of the business profits while working with Ms. Paxton. However, the record bears out Mr. Sacco’s assertion that he left most of his profits in the business in order to grow the company and build sweat equity for the future. Thus, we find that Mr. Sacco had a proprietary interest in the assets of the partnership.
This Court has recognized that there are no hard and fast rules in making the determination of whether a partnership exists, and each case must be considered on its own facts. Carr v. Masters, 469 So.2d 1147, 1149 (La.App. 4 Cir.1985). The consent to form a partnership may be inferred from circumstantial evidence. Id. Under the totality of the circumstances in the present ease, including the overall conduct of the parties, we find the record demonstrates a reasonable factual basis that a partnership existed.
We also find no error in the jury’s determination that Ms. Paxton breached the partnership agreement with Mr. Sacco. La. C.C. art. 2809 provides:
|1SA partner owes a fiduciary duty to the partnership and to his partners. He may not conduct any activity, for himself or on behalf of a third person that is contrary to his fiduciary duty and is prejudicial to the partnership. If he does so, he must account to the partnership and to his partners for the resulting profits.
Here, Mr. Sacco presented sufficient evidence to demonstrate that Ms. Paxton acted in bad faith and against the interests of the partnership. Moreover, because the jury was faced with opposing testimony from the parties, and two permissible views of the evidence, its choice to believe the evidence supporting Mr. Sacco’s position is not manifestly erroneous or clearly wrong. See Stobart, supra at 883.
In their third assignment of error, the defendants assert that the judgment violates the United States Copyright Act of 1976, 17 U.S.C. § 101. Specifically, Ms. Paxton argues that pursuant to the Copyright Act, Mr. Sacco could not have a propriety interest in the designs that Ms. Paxton created and registered with the Copyright office. Ms. Paxton submits that under 17 U.S.C. § 204(a), copyright ownership vests in the author and cannot be transferred unless the transfer is in writing.
The defendants did not raise the affirmative defense of federal preemption in their answer. It is well established that federal preemption is an affirmative defense, which, under La. C.C.P. arts. 1003 and 1005, should be pled in a defendant’s answer. See Furlough v. Union Pacific Railroad Co., 33,658, p. 6 (La.App. 2 Cir. 8/31/00), 766 So.2d 751, 756. The purpose of the pleading requirement for affirmative defenses is to provide plaintiffs with adequate notice of the nature of any defenses. Id.
*222 La. C.C.P. art. 1154 provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. If evidence is objected to at 114the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended. Id.
For introduction of evidence to automatically enlarge the pleadings under article 1154, the evidence admitted must not be pertinent to any other issue raised by the pleadings. Burns v. Interstate Brands Corp., 2009-705, p. 6 (La.App. 8 Cir. 2/3/10), 30 So.3d 271, 276; Snearl v. Mercer, 99-1738, p. 9 (La.App. 1 Cir. 2/16/01), 780 So.2d 563, 572. If the evidence was admissible for any other purpose, it cannot enlarge the pleadings without the express consent of the opposing party. Id.
In Cooper v. Borden, 30,292 (La.App. 2 Cir. 2/25/98), 709 So.2d 878, the issue of federal preemption was raised for the first time on appeal. Refusing to find that the pleadings had been enlarged to include such an affirmative defense, the Second Circuit stated that at no time during the trial or by any pleading did the defendant argue immunity from liability. Furthermore, the court in Cooper held that the brief mentioning of a federal regulation at trial was not sufficient to enlarge the pleadings to incorporate the affirmative defense of federal preemption. Id. at p. 3, 709 So.2d at 881. The court stated that to allow the defendant to raise the issue for the first time on appeal would defeat the purpose of requiring the pleading of a special defense i.e., to give plaintiffs fair and adequate notice of the nature of the defense. Id.
Here, the issue of Ms. Paxton’s immunity from liability under the U.S. Copyright Act was not raised at trial. The record reflects that the federal preemption issue was raised for the first time in the defendants’ motion for new trial and/or motion notwithstanding the verdict. Thus, we conclude that the |15pleadings were not enlarged to include this defense, and we find no merit in the defendants’ assignment of error.
The defendants next argue that the damages awarded to Mr. Sacco were not supported by the evidence. The jury awarded Mr. Sacco $1,563,013.00. According to Ralph Litolff (“Mr. Litolff’), Mr. Sacco’s expert witness in accounting, this amount represented fifty percent of what Ms. Paxton received in cash distributions and salary from KPD for the years 2004, through 2010.
Mr. Sacco was removed from the business in January 2004. At that time, the new company that Ms. Paxton formed, KPD, became the successor to PPDS, maintaining the same two major clients (Progressive Lighting and Bright International) that were developed during Mr. Sacco’s time with the business. Ms. Pax-ton testified that after Mr. Sacco left in 2004, she continued to receive revenue from Progressive Lighting and Bright International and did not develop contracts with many new customers.
Based on the business records he reviewed, Mr. Litolff stated that he did not consider Mr. Sacco to be an employee. In calculating Mr. Sacco’s damages as a result of Ms. Paxton’s alleged breach of partnership agreement, Mr. Litolff took into account the revenue received from Progressive Lighting and Bright International after 2004. Mr. Litolff also looked at the distributions and salary that Ms. Paxton received for the years in question, which totaled $2,199,013.00. He opined that Mr. Sacco was entitled to fifty percent of that amount, or approximately $1,563,013.00. *223 Mr. Litolff determined that as of December Bl, 2010, the fair market value of KPD was $1,060,000.00.
The jury heard conflicting testimony from Michelle Avery (“Ms. Avery”), Ms. Paxton’s expert witness in accounting. Ms. Avery testified that she saw 11finothing in the business records that would indicate that Mr. Sacco and Ms. Paxton were partners. However, she acknowledged that she was not provided with information regarding the parties’ 1998 agreement to work together, with Mr. Sacco putting up sweat equity.
Ms. Avery determined that the fair market value of the business in 2004 was $82,000.00. (She did not provide a 2010 value of the business). Unlike Mr. Litolff, Ms. Avery did not consider Mr. Sacco to be a partner, and therefore, her calculations did not take into account the years after Mr. Sacco’s termination in January 2004. Ms. Avery did not consider the contracts/ retainers with Progressive Lighting and Bright International that were already in place, and she did not consider the fact that Ms. Paxton took in $2.1 million, before taxes, between 2004, and 2010. Ms. Avery did acknowledge that the vast majority of contracts in both companies, i.e., KPD and its predecessor, PPDS, stemmed from Progressive Lighting and Bright International.
Factfinders are given “much discretion” in assessing damages. La. C.C. art. 2324.1. Therefore, the damage award is “entitled to great deference on review.” Trunk v. Med. Ctr. of La. at New Orleans, 2004-0181, p. 9 (La.10/19/04), 885 So.2d 584, 539. According to Mr. Litolffs testimony, Mr. Sacco’s loss as a result of Ms. Paxton’s breach of the partnership totaled $1,563,013.00. The jury chose to accept that figure. We find no abuse of discretion in this award.
In her final assignment of error, the defendants assert that there is no legal basis for a judgment against PPDS or KPD. More specifically, the defendants argue that there was no evidence that these entities were partners with Mr. Sacco and no evidence that he was a member, officer or shareholder in either business. |17Thus, the defendants submit that PPDS and KPD owed no fiduciary duty to Mr. Sacco. We find no merit in the defendants’ argument.
The facts of this case represent that Mr. Sacco and Ms. Paxton ran the design business as a partnership, and the partnership operated solely through PPDS and its successor, KPD. All of the partnership’s assets and income, including Mr. Sacco’s income that he let remain in the business, was held in the bank accounts of PPDS and KPD. Although Mr. Sacco was not a member, officer or shareholder of PPDS and KPD, under the circumstances, he clearly had a proprietary interest in these entities. Finding that Mr. Sacco was entitled to damages for Ms. Paxton’s breach of fiduciary duty, the jury did not err in rendering judgment against PPDS and KPD.
For the foregoing reasons, we find no error in the judgment of the lower court. Accordingly, we affirm.
AFFIRMED.
DYSART, J., Dissents for the Reasons Assigned by LOBRANO, J.
LOBRANO, J., Dissents with Reasons.

. The April 16, 2012 judgment also ordered plaintiff to pay damages to defendants for conversion, but that portion of the judgment has not been appealed by plaintiff or defendants.

. The trial court’s denial of the defendants' motions for new trial and judgment notwithstanding the verdict is not raised as an assignment of error herein.

. It is important to note that the next sentence in the Latiolais case states: "The absence of an express agreement to share in losses is not conclusive as to the nature of the relationship, since such an agreement may be implied from an agreement to share profits." In Latiolais, unlike the instant case, the only issue on appeal was whether there was a sharing of losses.