803 So.2d 1084 (2001)
Sandra G. LAMB, Plaintiff-Appellant,
v.
Robert Jason BERRY, et al., Defendants-Appellees.
No. 35,347-CA.
Court of Appeal of Louisiana, Second Circuit.
December 28, 2001.
Rankin, Yeldell, Herring, Katz & Downs, by Charles E. Herring, Jr., Counsel for Appellant.
Tracy L. Oakley, Ruston, Counsel for Appellees.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
GASKINS, Judge.
After settling for a total of $20,000 from two insurers, plaintiff Sandra G. Lamb went to trial against a third insurer and its *1085 insured, claiming that her injuries exceeded the amount previously paid. The trial court disagreed and found for the defendants. The plaintiff appeals. For the following reasons, we affirm.

FACTS
On September 22, 1997, the plaintiffs car was struck by a vehicle driven by defendant Robert Jason Berry and owned by Shannon Clark. The collision was caused by Mr. Berry's failure to yield at a stop sign. Mr. Berry and his insurer, Patterson Insurance Company, stipulated to his liability.
Prior to trial, the plaintiff settled with Progressive Security Insurance Company, the primary insurer on the Clark vehicle, for the policy limits of $10,000. As a condition of the settlement, the plaintiff agreed that any award against Mr. Berry and his insurer would be limited to his coverage of $10,000 under his insurance policy. The plaintiff also settled with her UM carrier for her policy limits of $10,000, and it waived subrogation.
At trial, the plaintiff contended that the accident caused her to sustain permanent injuries to her neck, lower back and right leg. She introduced the depositions of her treating physicians and physical therapists, as well as the testimony of her son, her sister, a previous employer, and a friend. Each testified that the plaintiff complained of pain following the accident. She quit her job cleaning a mechanic's shop. She participated less in activities she had enjoyed prior to the accident.
Each of the plaintiffs doctors stated that there was a lack of objective findings to support the plaintiffs subjective complaints of pain. The plaintiff was initially treated for cervical pain by Dr. Kenneth McDonald, her longtime family doctor; however, she later sought medical treatment from other doctors for lumbar pain and radiating leg pain. Dr. Peter Spohn, an orthopedic surgeon, stated that when performing the straight leg test while lying down, the plaintiff appeared to experience pain. When performing the same test while sitting up, the plaintiff appeared to be pain-free. Dr. Spohn stated that this result was "inconsistent" and suggested "poor cooperation." When asked if this result could represent pain during the testing, Dr. Spohn said, "Actually, no. It actually indicates either someone who has learned how to do the tests partially, or literally they're just not cooperating." Dr. Spohn was unable to explain the particular pains that the plaintiff felt and repeatedly asserted that the complaints and the medical findings were "inconsistent." Dr. Spohn hypothesized that the plaintiffs back pains could have been caused by the accident, but repeatedly affirmed that the leg weakness and pain could not have been caused by the accident. Dr. Spohn stated at one point that he believed that the plaintiffs complaints would resolve themselves after the case was settled.
Dr. McDonald treated the plaintiff for several years prior to the accident. Following the accident, on September 25, 1997, he treated the plaintiff for complaints of some "neck and arm pain." At that time, she had muscle spasms and strain in her neck. X-rays revealed that she had some straightening of the normal lordotic curve, some mild degenerative changes and some mild scoliosis. He diagnosed her with acute muscle strain of the neck and treated her with Soma, a muscle relaxer, and Motrin, a non-narcotic pain reliever. Dr. McDonald noted that she had some degenerative disc disease on the C-spine, a phenomenon that he noted was normal for a woman her age. All of the doctors, including Dr. Sidney Lee Bailey and Dr. Douglas Brown, agreed that her degenerative changes were consistent with her age. (She was 53 years old at the time of the accident.)
*1086 On October 27, 1997, Dr. McDonald made a note that all of the plaintiffs problems appeared to be resolving. Based on the plaintiffs history and complaints, Dr. McDonald stated that he believed the muscle spasm in her neck and her pain for about two or three months afterward could be attributed to the accident. Dr. McDonald also read a letter that he had previously dictated regarding the plaintiffs injuries. This letter stated that the plaintiff was disabled for six weeks as a result of the accident and suffered no permanent disability. Dr. McDonald also stated that he was unaware that the plaintiff had any complaints about her leg buckling and that every time he saw her, she could walk "perfectly normal" up and down the hall. When questioned regarding subsequent pain that the plaintiff might be experiencing, Dr. McDonald stated that any flare-ups she might experience would be from her degenerative condition and not complications from the accident.
The defense presented a surveillance video of the plaintiff taken in July 1998, in which the plaintiff wrestles with the tailgate of her pickup truck for several minutes, uses a hammer to attempt to open the tailgate and finally gives up. She then loads boxes into the truck, climbing over the raised tailgate several times.
The trial court, in reasons for judgment, found that the plaintiff did not show that the accident caused the extent of the pain and suffering she now alleges. The trial court cited the lack of objective findings for the symptoms that the plaintiff claims to experience. The trial court further found that the actions of the plaintiff on the video discredited her allegations of pain, suffering and discomfort as well as her claims as to her physical limitations. Finding that the plaintiff was entitled to no further relief, the trial court then dismissed the plaintiffs claims. The plaintiff appeals.

DISCUSSION
The plaintiff challenges the trial court's finding that she failed to meet her burden of proving that the accident caused the exacerbation of her pre-existing injuries. She argues that once she made a showing that her pain increased, it became incumbent upon the defendants to show that the increased pain was not a result of the accident.
Before recovery can be granted for aggravation of a preexisting condition, a causative link between the accident and the victim's current status must be established. The test for determining a causal relationship between an accident and subsequent injuries, in a personal injury suit, is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident. The plaintiff is aided in establishing this burden by the legal presumption that a medical condition producing disability is presumed to have resulted from the accident if, before the accident, the injured person was in good health, but the disabling condition manifested itself shortly after the accident. Williamson v. St. Francis Medical Center, Inc., 559 So.2d 929 (La. App. 2d Cir.1990).
In the instant case, the trial court determined that the plaintiff had not met the burden of proof required to shift the burden to the defendants. In its written reasons, the trial court stated that the plaintiff "failed in her burden to show that [her pain] is caused by injuries sustained in the accident." The trial court found that the "vast majority" of medical evidence showed no objective findings to indicate that the injuries received in the accident caused the present symptoms and could not confirm that any of the plaintiffs symptoms were caused by the accident. The trial court also stated that the video *1087 discredited the plaintiff's assertions of pain and physical limitations. Our standard of review in this type of case is well settled:
The trial court's factual findings are accorded great weight and may not be disturbed by a reviewing court in the absence of manifest error. Rosell v. Esco, 549 So.2d 840 (La.1989); Rodgers v. Brookshire Grocery Company 29,920 (La.App.2d Cir.10/29/97), 702 So.2d 11. To reverse a trial court's factual determinations, a court of appeal must find from the record that there is no reasonable factual basis for the findings and that the findings are clearly wrong or manifestly erroneous. Thompson v. Coates, 29,333 (La.App.2d Cir.5/7/97), 694 So.2d 599, writs denied, 97-1442 (La.9/26/97), 701 So.2d 985 and 97-1521 (La.9/26/97), 701 So.2d 987. If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell, supra.

Butler v. Doug's IGA, 34,232 (La.App.2d Cir.12/6/00), 774 So.2d 1067.
Our review of the trial testimony, depositions and physical evidence submitted to the lower court reveals that the record supports the lower court's determination that the plaintiff had not carried her burden of proof. The only evidence of the plaintiff's pain is her self-serving testimony and the testimony of others to whom she had complained. The doctors were unable to present any explanation of why the plaintiff's pain would have been increased as a result of the accident. In fact, Dr. Spohn repeatedly stated that the objective studies and the plaintiffs subjective complaints were inconsistent. The video shows the plaintiff engaging in activities that she would have the court believe are painful or impossible. The record reveals a reasonable factual basis for the trial court's findings. The conclusions drawn by the trial court are well supported by the record and will not be disturbed on appeal.

CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff/appellant.
AFFIRMED.