J^BROWN, J.
Around 4:00 p.m. on September 28, 1999,[1] Oscar Johnston was traveling south on Self Road in West Carroll Parish. Floyd Hendricks, an employee of the State Department of Agriculture and Forestry, was heading north on the same road. Johnston and Hendricks, who were neighbors, stopped their respective vehicles in the roadway and began talking about the Boll Weevil Eradication Program. Hendricks, who was in a state truck equipped with a spraying apparatus, lowered the sprayer and turned it on, releasing Malathion, a chemical used to kill boll weevils. Johnston claimed that the pesticide was sprayed in his face, causing extensive and severe injuries. Johnston and his wife, Mary, sued Floyd Hendricks and his employer, the State of Louisiana, Department of Agriculture and Forestry.[2]
The trial court granted plaintiffs’ motion for partial summary judgment on the issue of liability, finding Floyd Hendricks solely at fault. Defendants’ appeal from this partial summary judgment was denied by this court. Johnston v. Hendricks, 34,516 (La.App.2d Cir.04/04/01), 793 So.2d 565 (unpublished).
A jury trial on the remaining issue of damages was held September 18-21, 2000.[3] The jury unanimously found that Oscar Johnston did not Usuffer any injury as a result of the accident in question and awarded no damages.
Plaintiffs filed motions for new trial and judgment notwithstanding the verdict (JNOV). The trial court denied JNOV but granted the motion for new trial. Defendants filed a writ application with this court seeking review of the trial court’s judgment granting plaintiffs a new trial. This court denied the writ application. The supreme court, under its supervisory jurisdiction, ordered this court to reconsider defendants’ application after giving them a reasonable opportunity to supplement their application with the entire record. Johnston v. Hendricks, 01-2616 (La.12/14/01), 803 So.2d 979. We have done so and deny the writ application.

Discussion

The sole issue raised by defendants in their writ application is whether the trial court erred in granting plaintiffs’ motion for new trial.[4]

*645
Applicable Legal Principles

In a personal injury lawsuit, the plaintiff bears the burden of proving a causal relationship between the accident and the complained-of injuries. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.02/20/95), 650 So.2d 757; American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991). Plaintiffs are aided in proving a causal | ¡¡relationship between the accident and their injuries by the legal presumption that a medical condition producing disability is presumed to have resulted from the accident if the injured person was in good health prior to the accident, but shortly after the accident, the disabling condition manifested itself. To overcome this presumption, the defendants must show that some other particular incident could have caused the injury in question; Maranto, supra; Lamb v. Berry, 35,347 (La.App.2d Cir.12/28/01), 803 So.2d 1084.
La.C.C.P. art.1972 provides the peremptory grounds for the granting of a new trial. Article 1972 reads as follows:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
The granting of a new trial is mandatory if the trial court finds that the verdict is contrary to the law and evidence under La.C.C.P. art.1972. The decision of whether to grant a new trial requires the balancing of many factors. Martin v. Heritage Manor South, 00-1023 (La.04/03/01), 784 So.2d 627; Davis v. Wal-Mart Stores, Inc., 00-0445 (La.11/28/00), 774 So.2d 84. In considering a motion for new trial under La.C.C.P. art.1972, the trial court may evaluate the evidence without favoring any party; it may draw its own inferences and conclusions and may evaluate witness credibility to determine whether the jury erred in giving too much credence 14to an unreliable, witness. Martin, supra; Joseph v. Broussard Rice Mill, Inc., 00-0628 (La.10/30/00), 772 So.2d 94.
This, however, does not mean that a trial judge can usurp the jury’s fact-finding role. Martin, supra: A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury’s factual determinations and must be viewed in that light. Davis, supra. The jury’s verdict should not be set aside if it is supportable by any fair interpretation of the evidence. Id.; Gibson v. Bossier City General Hospital, 594 So.2d 1332 (La.App. 2d Cir.1991).
Louisiana jurisprudence is clear that a'new trial should be ordered under La.C.C.P. art.l972(l) when the trial court, exercising its discretion, is convinced from its examination of the facts that the judgment would result in a miscarriage of justice. Rivet v. State, Dept. of Transportation & Development, 01-0961 (La.11/29/01), 800 So.2d 777; Posey v. Singletary, 34,913 (La.App.2d Cir.09/28/01), 795 So.2d 1249.
 The granting or denying of a new trial rests within the wide discretion of the *646 trial court and its determination should not be disturbed absent a clear abuse of discretion. Posey, supra; Raburn v. Williams, 34,718 (La.App.2d Cir.05/09/01), 786 So.2d 955; Morehead v. Ford Motor Co., 29,399 (La.App.2d Cir.05/21/97), 694 So.2d 650, writ denied, 97-1865 (La.11/07/97), 703 So.2d 1265.

^Analysis

In this case, the trial court granted a new trial based upon La.C.C.P. art.l972(l)', finding that the jury’s verdict was contrary to the law and the evidence. Specifically, the trial court observed:
... Mr. Johnston testified at the trial held on September 18, 2000, and days following that the spray of Malathion admitted (sic) by the sprayer contacted his face and eyes and upper extremities, causing him to suffer injuries and damages and causing Mrs. Johnston to suffer consortium damages, which they attempted to prove by way of their testimony and testimony from family members as well as medical evidence. Mr. Hendricks and the Department of Agriculture and Forestry offered evidence in rebuttal that no Malathion contacted Mr. Johnston[’s] body and even if some of the chemical did make contact, the chemical would not have caused the injuries and damages complained of.... I am convinced after examining the evidence presented during the trial that the jury’s verdict has resulted in a miscarriage of justice such that a new trial should be ordered. Dr. Ralph Abraham, Mr. Johnston’s first treating physician, testified that plaintiffs eye injury resulted from his exposure to cotton poison, that Malathion sprayed in the eye could cause the injuries plaintiff suffered. Dr. Timothy Joseph Mickel testified that Mr. Johnston’s injuries were consistent with farm chemical being placed in plaintiffs eye. Dr. William A. Byrd testified that plaintiff had suffered a chemical type burn to his eye which caused his eye lashes to grow the wrong way in his lower lid resulting in plaintiffs eye irritation. Dr. Anthony LaRocco testified and confirmed that farm chemical spray caused plaintiffs eye injury and resulting eye infection. Dr. Lawrence J. D’Anna testified that plaintiffs eye injury resulted from his being sprayed with an oil-based Malathion mixture and resulted in a staph infection in and on his eye lid, his nose, his face and a number of other areas. In addition to the medical expert testimony, plaintiff and his wife and family members also confirmed that Mr. Johnston was not experiencing any of the injury symptoms prior to the accident and only began to suffer these injuries and symptoms after the accident or the spraying procedure had occurred. ...
Considering the medical and lay testimony elicited by the plaintiffs and the limited rebuttal evidence on this issue submitted by the defendants, and realizing that the defendants are entitled to the benefits of the favorable jury verdict, and giving great [deference] to | fithe jury in its factfinding process and rol[e], I believe that the plaintiffs] did meet their burden of proof and that Mr. Johnston was injured by the spray of Malathion emitted from the department’s spraying device.... Therefore, I find that the verdict appears clearly contrary to the law and the evidence and will result in a miscarriage of justice if not corrected.
Having reviewed the record in its entirety to determine whether the jury’s verdict is supportable by any fair interpretation of the evidence, we find that the trial court did not abuse its discretion in granting a new trial. That there was an *647 accident is undisputed. Regarding the crucial issue of causation, however, while disputing that plaintiffs’ injuries were precipitated by the spraying incident, defendants offered very little evidence in support of their position. On the other hand, plaintiffs offered overwhelming lay and medical evidence that their injuries were in fact causally connected to the accident.

Conclusion

After reviewing the entire record and finding that the judgment of the trial court granting plaintiffs’ motion for new trial was correct, we hereby deny defendants’ writ application.
This matter is remanded to the trial court for further proceedings in accordance with this opinion.

. According to Floyd Hendricks, the date/time of the spraying incident was September 22, 1999, around 11:00 a.m.

. Plaintiffs also named as defendant Bob Odom, the Commissioner of Agriculture and Forestry.

. Defendants filed a motion for continuance which was denied by the trial court. A writ application to this court was likewise denied. Johnston v. Hendricks, 34,502 CW (La.App.2d Cir.09/19/00) (unpublished).

.The trial court record contained a notice of appeal filed by plaintiffs in January 2002 seeking review of the trial court’s May 11, 2001 denial of their motion for JNOV. Such an appeal seeking relief on the merits unfortunately was not timely filed. Thereafter, on *645 March 13, 2002, plaintiffs filed an answer, urging this court to consider the writ grant as an appeal. However, there has been no writ grant. The supreme court simply ordered this court "to reconsider relators’ application for supervisory writs after giving relators a reasonable opportunity to supplement their application with the record in this case.”