PEATROSS, J.
_[iIn this personal injury suit arising out of an automobile accident, Plaintiff Mary Ann Freeman Hall appeals a judgment in favor of Defendant Allstate Insurance Company (“Allstate”). For the reasons stated herein, we affirm.

FACTS

This case arises out of a minor automobile accident that occurred on August 21, 2001, in which Ms. Hall was allegedly injured and/or sustained aggravations to preexisting back injuries. She was a guest passenger in the back seat of an “Action Taxi” driven by Sarah Jo Peterson. The taxi was traveling down Jefferson Paige Road in Shreveport, Louisiana. As the taxi approached Ms. Hall’s residence, she leaned forward to give Ms. Peterson directions when the taxi was struck by a vehicle driven by Kambrya Pipkin. Ms. Hall testified that she “just jerked” when the taxi was struck. The investigating officer described the accident as “very minor.” Ms. Hall did not report being injured immediately after the accident.
Ms. Pipkin was uninsured. The taxi owner was insured by Universal Insurance Company (“Universal”), which provided $25,000 in coverage. Ms. Hall was insured by Allstate, which provided Uninsured Motorist coverage with a limit of $100,000. In April 2002, Allstate tendered to Ms. Hall $50,000 under its UM coverage and $5,000 under the medical pay portion of the policy. On May 14, 2002, Ms. Hall filed this suit against Ms. Pipkin, Ms. Peterson, Universal and Allstate for damages associated with injuries and/or aggravation of preexisting injuries she allegedly | ..sustained in the accident. Universal settled with Ms. Hall prior to trial for $10,000.
At trial, the issue was whether Allstate’s tender was sufficient to compensate Ms. Hall for her alleged injuries. She had back surgery in January 2002 and claims that her damages exceed the $100,000 limit of the UM policy with Allstate. -Ms. Hall contends that she suffered a low back injury and herniated disk that ultimately required surgery. Voluminous medical records and various doctors’ depositions were introduced at trial, in addition to the testimony of Ms. Hall, her son, a former boyfriend and Dr. Richard Kamm. The record was left open after the trial for the taking of additional medical depositions; however, before any depositions were taken, Ms. Hall fired her attorney and chose not to retain new counsel.
The record reveals that Ms. Hall experienced back injuries and has undergone numerous surgeries since the August 2001 accident. She had also been in at least three accidents, both prior to and after the *356 August 2001 accident and has filed at least two other personal injury suits. She was on disability for injuries sustained in a 1994 accident.
After observing Ms. Hall’s testimony and demeanor in court, the trial judge found her not to be a credible witness, noting that Ms.. Hall appeared to be on drugs during the trial and was snapping at lawyers, was “less than candid” with the doctors and exaggerated the severity of the minor accident. Noting that Ms. Hall could not present a coherent picture of her medical history due to the extensive treatment she has received over the years and the amount of pain medication she was taking, the trial judge outlined |aMs. Hall’s medical history as follows (this history is taken verbatim from the judge’s reasons and is supported by the record):
• September 1987 — car wreck — Dr. Warren Long performs a cervical fusion on CM and C-5
• January 1994 — Florida wreck. — Dr. Long in Louisiana performs another cervical fusion on C-3-4-5-6
• 1994 — plaintiff declared “disabled”
• March 1996 — Lumbar lower back surgery and a laminectomy by Dr. Long allegedly from the 1994 wreck
• Summer of 1997 — plaintiff visits numerous doctors for “back pain” and pain medicine
• October 1997 — plaintiff is treated by a Dr. [Desmond] Hussey in Florida and gets prescription for methadone
• December 1997 and forward — plaintiff is treated by numerous doctors in Florida and Ohio; diagnosed with “chronic pain syndrome and complains of back pains and pain going to legs” by both Florida doctors and the Cleveland Clinic in Ohio
• 2000 — treated by Florida doctors — Dr. Hussey and Dr. [Mark] Gerber for sharp lower back and aching and numbness in legs and is advised that she needed surgery on L^4 and L-5. She intended to have the surgery but by her own admission [did] not follow through because of an intervening divorce.
• January 2001 — relocates to Shreveport
• May 2001 — goes to LSU Medical Center to get a referral for a neurosurgeon to have the recommended surgery
• June 2001 — LSU doctor diagnoses post lumbar laminectomy syndrome and increase methadone
• August 2001 — prior to accident — plaintiff begins receiving epidurals at Christus Schumpert
[August 21, 2001 — accident at issue]
• August 23 and 30, 2001 — 2 visits with Dr. Kamm
• September 2001 — sees Dr. Warren Long again for a myelogram who recommends surgery
• January 2002 — Dr. Donald Smith operates on L-4 and L-5 which was the same surgery recommended to her in 2000 (she did not advise Dr. Smith of this).
• July 2002 — plaintiff admitted on cross-examination that she was able to water ski
• July 31, 2002 — plaintiff is in a one-car accident caused by her own negligence
• Late 2003-2004 — plaintiff begins to see Dr. [Pierce] Nunley, who is also treating her niece

\ ACTION OF THE TRIAL COURT AND REASONS

The trial court found that Allstate has “more than fully satisfied any and all amounts that it could possibly owe” to Ms. Hall. The trial court further stated that *357 Ms. Hall had “an extensive medical and litigation history” and was seeking to have Allstate pay her for surgery she needed long before the accident at issue in this suit. The trial court also noted that some of the bills presented by Ms. Hall relate to the treatment prior to the accident in question and some are for treatment after the accident. Ultimately, the court concluded that Ms. Hall failed to carry her burden of proving a causative link between her alleged pain and the August 2001 accident, finding that Ms. Hall suffered from the same alleged lower back and leg pain in 2000 before the accident as after the accident, but had elected not to have surgery in 2000 because of her divorce. She did suffer some muscle sprains after the 2001 accident; but, according to Dr. Kamm, this would not have exacerbated her L-4 and L-5 problems. The court found that the deposition testimony of the doctors in this case seriously undermined Ms. Hall’s testimony, and the testimony of her son, as to the severity of any injuries from this accident. In fact, the trial court stated that Allstate was very generous in its payment to Ms. Hall. Accordingly, the trial court ruled in favor of Allstate, dismissing Ms. Hall’s claims with prejudice.

DISCUSSION

Our review of the factual findings in this case are governed by the manifest error/clearly wrong standard of review. It is a well settled principle that an appellate court may not set aside a trial court’s finding of Uact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id.; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly wrong. Rosell, supra; Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra. Where the fact finder’s conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell, supra.
The reviewing court must always keep in mind that, if a trier of fact’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that, if it had been sitting as trier of fact, it would have weighed the evidence differently. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). For the reviewing court, the issue to be resolved is not whether the trier of fact was wrong, but whether the fact finder’s conclusions were reasonable. Stobart, supra; Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305.
|fiIn addition, the assessment of damages, i.e., the finding of the appropriate amount of damages in a case, is also a factual determination entitled to great deference on review. The role of the appellate court in reviewing general damages is not to decide what it considers to be an appropriate award of damages, but, rather, to review the exercise of discretion by the lower court. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
Before recovery can be granted for aggravation of a preexisting condition, *358 a causative link between the accident and the victim's current status must be established. Lamb v. Berry, 35,347 (La.App.2d Cir.12/28/01), 803 So.2d 1084. The test for determining a causal relationship between an accident and subsequent injuries in a personal injury suit is whether the plaintiff proved through medical testimony that it was more probable than not that subsequent injuries were caused by trauma suffered in the accident. Id. The plaintiff is aided in establishing this burden by the legal presumption that a medical condition producing disability is presumed to have resulted from the accident if, before the accident, the injured person was in good health, but the disabling condition manifested itself shortly after the accident. Id., citing Williamson v. St. Francis Medical Center, Inc., 559 So.2d 929 (La.App. 2d Cir.1990).
In the case sub judice, the trial court determined that Ms. Hall failed to carry her burden of proving that the August 2001 accident was the cause of any alleged leg pain (or the condition of her lumbar spine). The trial court further found that Ms. Hall was not a credible witness “based on her [ 7demeanor in court and her testimony.” As previously mentioned, the court noted that Ms. Hall was “less than candid with the doctors she saw after this accident about all her prior history and she also exaggerated the severity of the minor accident.” Noting Ms. Hall’s extensive accident, medical and litigation history, the court stated that she appeared to be “under the influence of drugs during the trial” and “could not present a coherent picture” of her treatment. After reading the transcript, and remaining mindful that the trial court is in the best position to observe the demeanor of the witness and weigh her credibility, we cannot say that the decision to discredit her testimony was an abuse of discretion.
Our review of the trial testimony, depositions and physical evidence submitted to the lower court reveals that the record supports the lower court’s determination that Ms. Hall did not carry her burden of proof. As in Lamb, supra, the only evidence of Ms. Hall’s pain is her self-serving testimony and the testimony of her son, whom the trial judge found to be not credible, and her boyfriend, who did not even know Ms. Hall until well after the August 2001 accident. In addition, the record is clear, by Ms. Hall’s admission, that the surgery performed on Ms. Hall after the August 2001 accident was the same surgery that had been recommended prior to the accident, but was delayed by Ms. Hall for personal reasons. Moreover, Dr. Warren Long testified that the myelogram taken prior to the accident was virtually the same as the myelogram taken after the accident. Furthermore, Dr. Donald Smith, the neurosurgeon who performed the January 2002 back surgery on Ms. Hall, testified in deposition that her back condition was |sdegenerative in nature and not caused by acute trauma. This record provides a reasonable basis for the determination that there was insufficient proof of a causal link between any back or leg pain and the August 2001 accident.
Finally, we acknowledge, as did the trial court, that the testimony supports that Ms. Hall suffered some muscle spasms and soft tissue swelling in the days immediately following the August 2001 accident. Dr. Kamm testified that he felt some swelling and spasms in his initial examination of Ms. Hall days after the accident and attributed these conditions to trauma sustained in the accident. One week later, Dr. Kamm re-examined Ms. Hall and made objective findings that the muscle spasms had ceased and the soft tissue swelling was improved. Her activity level at the one week follow-up visit had *359 increased significantly as well. The trial court’s conclusion that Allstate’s tender of $50,000 adequately compensated Ms. Hall for these injuries is reasonable.
In summary, the record reveals a reasonable factual basis for the trial court’s findings. The conclusions drawn by the trial court are well supported by the record and will not be disturbed on appeal.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed at Mary Ann Freeman Hall’s cost.
AFFIRMED.